(February 19, 1884.)

## WINTERS v. SWIFT.

### [3 Pac. 15.]

CONVEYANCE—DEED—MORTGAGE—CONSTRUCTION OF CONTRACT.—A deed absolute on its face given by A to B for real estate therein described, and a bond given by B to A, agreeing to convey to A a portion of the same property at a stipulated time, although given on the same date and for the same price, if not intended to be a mortgage or security for money by the parties themselves and not appearing to be such on the face of the instrument, will be held to be an absolute bargain and sale, and not a mortgage.

CONTRACT—CONSTRUCTION—INTENTION OF PARTIES—EVIDENCE.—The intention of the parties is to be ascertained—1. From the instruments themselves; 2. From parol testimony, and, when ascertained, will be carried out by the courts.

LEX LOCI—QUESTION OF USURY.—The question as to whether a note which is made and delivered in Utah is usurious or not is to be decided by the laws of Utah.

APPEAL from District Court, Alturas County. Affirmed.

F. Ganahl, L. Vineyard and D. E. Waldton, for Appellant.

The law declares this transaction a mortgage. If not a mortgage at law, the presumption is in equity, it will be so held. That if there be a doubt as to the nature of the transaction, and the relation of debtor and creditor existed at its inception, the doubt will be solved in favor of the debtor and the transaction held to be a mortgage. At law an absolute deed and separate defeasance or agreement to reconvey, executed at the same time, amount to a mortgage. (*Colwell v. Woods,* 3 Watts, 188; *Jaques v. Weeks,* 7 Watts, 261; *Huling v. Drexell,* 7 Watts, 126; *Rankin v. Mortimere,* 7 Watts, 372; *Kerr v. Gilmore,* 6 Watts, 405; *Brown v. Nickle,* 6 Pa. St. 390;

*Wilson v. Shoenberger,* 31 Pa. St. 295; *Reitenbaugh v. Ludwick,* 31 Pa. St. 131; *Bayley v. Bailey,* 5 Gray, 505; *Haines v. Thomson,* 70 Pa. St. 434; *Sweetzer's Appeal,* 71 Pa. St. 264; *Taylor v. Weld,* 5 Mass. 109; *Kelleran v. Brown,* 4 Mass. 443; *Carey v. Rawson,* 8 Mass. 159; *Erskins v. Townsend,* 2 Mass. 493, 3 Am. Dec. 71; *Newhall v. Burt,* 7 Pick. 156; *Stocking v. Fairchild,* 5 Pick. 181; *Newhall v. Pierce,* 5 Pick. 450; *Rice v. Rice,* 4 Pick. 349; *Eaton v. Whiting,* 3 Pick. 484; *Trull v. Skinner,* 17 Pick. 213; *Lanfair v. Lanfair,* 18 Pick. 299; *Peterson v. Clark,* 15 Johns. 205; *Clark v. Henry,* 2 Cow. 324; *Bloodgood v. Zeily,* 2 Caines Cas. 124; *Robinson v. Cropsey,* 2 Edw. Ch. 138; *Robinson v. Cropsey,* 6 Paige, 480; *Brown v. Dewe,* 1 Sand. 56; *Slee v. Manhattan Co.,* 1 Paige, 48; *Dry v. Dunham,* 2 Johns. Ch.189; *Henry v. Davis,* 7 Johns. Ch. 40; *Barton v. May,* 3 Sand. 450; *Palmer v. Gurnsey,* 7 Wend. 248; *Baker v. Thrasher,* 4 Denio, 493; *Murphy v. Calley,* 1 Allen, 107; *Polhemus v. Trainer,* 30 Cal. 687; *Gay v. Hamilton,* 33 Cal. 686; 1 Jones on Mortgages, sec. 244.) "When the conveyance, and the agreement to reconvey, are on their face of even date, the transaction is necessarily a mortgage, and parol evidence of a different understanding by the parties will not be received to convert it into a conditional sale. When the two instruments are of different dates, such evidence is admissible." (1 Jones on Mortgages, sec. 248; *Kerr v. Gilmore,* 6 Watts, 405; *Brown v. Nichol,* 6 Pa. St. 390.) The continued possession of the grantor is also evidence tending to show that the conveyance was a mortgage. (*Spencer v. Weatherly,* 1 Jones, 328; *Ruffier v. Womach,* 30 Tex. 332; *Campbell v. Dearborn,* 109 Mass. 130, 12 Am. Rep. 671; *Steel v. Black,* 3 Jones Eq. 427; *Streater v. Jones,* 3 Hawks, 423; *Sellers v. Stalcup,* 7 Ired. Eq. 13; *Kemp v. Earp,* 7 Ired. Eq. 167; *Thompson v. Banks,* 2 Md. Ch. 430; *Crews v. Thundergill,* 35 Ala. 334; *Daubenspeck v. Platt,* 22 Cal. 330.) Inadequacy of price is also a circumstance tending to show that the transaction is a mortgage rather than a sale. (*Spencer v. Weatherly,* 1 Jones, 328; *Davis v. Stonestreet,* 4 Ind. 101; *Wilson v. Patrick,* 34 Iowa, 362; *Trucks v. Lindsey,* 18 Iowa, 504; *West v. Hendrix,* 28 Ala. 234; *Overton v. Bigelow,* 3 Yerg. 513; *Gibbs*

*v. Penny,* 43 Tex. 560.) The McCormick note secured by the trust deed (Exhibit "L") was executed by Jaikowski, at Ketchum, Idaho territory, and not in Utah; the property affected by and embraced in the trust deed is situated in Idaho. The *lex loci contractus,* and *lex rei situs* are the laws of Idaho, and under them the contract and security are alike void as to the interest. · (2 Parsons on Contracts, pp. 571-575; 1 Jones on Mortgages, 656, 661, 662.) This point, however, was not properly before the court below and should not have been decided, for it only became material on the question of accounting and the amount to be paid on redemption after the court had decided that the transaction was a mortgage, and having decided it to be a conditional sale, this question ceased to be material.

James H. Beatty, for Respondents.

The McCormick note of $6,000 was finally executed and delivered in Utah territory (228), and the stipulated interest is legal in Utah (Finding 28, p. 102). The note was neither void nor usurious. (*Miller v. Tiffany,* 1 Wall. 309; 2 Kent's Commentaries, 460.) Appellant does not in his bill show, nor has it in any way appeared, that he ever offered, or is ready to redeem, or to pay what the court may order, or to comply with its decrees, but instead, with much assurance, asks the court to declare void all of Jaikowski's debts which Swift had assumed and paid. Instead of doing equity, while pretending to seek it, appellant asks the court to do a most iniquitous act. His bill does not entitle him to relief. (1 Daniell's Chancery Practice, 188, 189; Story's Equity Pleading, sec. 187.) Respondent insists that beyond question the law is: 1. That when a deed is absolute and unconditional in form, and there is no other instrument so referring to or modifying it as to constitute a defeasance thereto, the former must, *in all cases,* be held an absolute conveyance, until shown otherwise by evidence *aliunde* the instruments; 2. That to show it otherwise the actual *intention* of the parties is the test; and 3. Such intention must be shown by evidence *so clear as to leave no doubt.* (*Holmes v. Grant,* 8 Paige, 243, 257; *Glover v. Payn,* 19 Wend. 519; *Flagg v. Mann,* 14 Pick. 467; *Hughes v. Sheaff,* 19 Iowa, 343;

*Robinson v. Cropsey,* 2 Edw. Ch. 138; *Conway v. Alexander,* 7 Cranch, 235; *People v. Irwin,* 14 Cal. 428; *Henley v. Hotaling,* 41 Cal. 22-28; *Page v. Vilhac,* 42 Cal. 78; *Farmer v. Grose,* 42 Cal. 171-173; *Turner v. Kerr,* 44 Mo. 429; *Pitts v. Cable,* 44 Ill. 103; *Hanford v. Blessing,* 80 Ill. 189, 191; *Bingham v. Thompson,* 4 Nev. 232; 1 Jones on Mortgages, secs. 258, 260, 261.) To constitute a mortgage, in addition to the mortgagor's right of redemption, the mortgagee must have the right of enforcing the collection of his debt against the mortgagor as well as the property. (7 Cranch, 237, *supra;* 41 Cal. 28, *supra;* 42 Cal. 173, *supra;* 2 Edw. Ch. 144, *supra;* 14 Pick. 478, *supra;* 44 Ill. 106, *supra;* 1 Jones on Mortgages, sec. 264.) When the instruments show a conditional sale, or an absolute sale with option of repurchase as in this case, the terms of repurchase must be complied with, and if not the party will be without relief. (41 Cal. 27; 44 Mo. 433; 19 Iowa, 344; 1 Jones on Mortgages, secs. 264, 267, 258.)

MORGAN, C. J.—It appears from the evidence and the findings of the court in this cause that Wilhelm Jaikowski was the owner and in possession of two-thirds interest in the North Star mine and one-half interest in the American Eagle mine, both situated in Warm Spring district, Alturas county, Idaho; that one Riley was the owner of the one-third of the North Star mine and one-half of the American Eagle; that in working said mine Jaikowski, prior to the seventh day of September, 1881, had become indebted to Pinkham & Leonard in the sum of $2,082.98, for which he had given his note and mortgage on one-third of the North Star mine, dated, respectively, January 7, 1881; that he was then also indebted to J. O. Swift & Co., a firm composed of J. O. Swift and T. E. Clohecy, both defendants herein, to the amount of between three and four thousand dollars; that to pay off said indebtedness, and obtain means to work said mines, Jaikowski, about the 1st of March, A. D. 1881, employed defendant Clohecy to go to Salt Lake City and procure a loan of $6,000; to enable Clohecy to secure said loan, Jaikowski executed to said Clohecy a note for $6,000, with place where payable and name of payee in blank,

dated March 1, 1881, and due in five months from date; he also executed to Clohecy a power of attorney to sell or mortgage his interest in said North Star mine; that Clohecy thereupon went to Salt Lake City, and secured a loan from McCormick & Co., in the sum of $6,000; that Clohecy delivered to said McCormick & Co. the said promissory note, properly filled out and indorsed by him; that he also, for the purpose of securing said note, executed a trust deed conveying Jaikowski's interest in the North Star mine to William H. Greenhow and George A. McCormick, with power to them or the sheriff of the county to sell said interest on default of payment of the debt. With the $6,000 thus obtained, Clohecy paid off various items of indebtedness due from Jaikowski, including the debt due Pinkham & Leonard.

During the summer of 1881 Jaikowski made various attempts to sell his interest in the North Star mine, employing Clohecy and others to aid him in effecting said sale. The mine was not sold. The latter part of August Jaikowski went to Salt Lake; the note and trust deed were coming due September 1, 1881. Jaikowski attempted to get further time on the $6,000 note, which was refused by McCormick & Co. About the 1st of September J. O. Swift, defendant, went to Salt Lake City, and, at Jaikowski's request, went with him to various persons to effect a sale of the mine, but was unable to do so. After all these failures to sell Jaikowski's interest in these mines, during which he had offered the whole for $12,000, he (Jaikowski) offered to sell to Swift, on the sixth day of September, 1881, two-thirds of the two mines, all the ore on the dumps, with the cabin, tools, cooking utensils at the mine, and his claim for contribution against Riley, his partner, if Swift would pay the debt to McCormick & Co., his debt to J. O. Swift & Co., and furnish him money to go back to Idaho. Swift, after seeing McCormick & Co., and obtaining further time on that debt, on the seventh day of September told Jaikowski that he would accept his offer, and would pay the debt to McCormick & Co., and the debt to J. O. Swift & Co., and would furnish him sixty dollars to return to Idaho, if Jaikowski would sell the property to him at that price. The terms above stated being agreed

upon by both parties, they went together to the office of W. C. Hall, an attorney, the terms of the sale were stated to the attorney in the presence of both parties, and he was directed to draw up a deed for two-thirds of both mines, a bill of sale of all the ores on the dump of said mines, all the tools, cabin, cooking utensils, and an assignment of Jaikowski's claim for contribution against his mining partner, Riley, for the consideration aforesaid, which was stated to be $11,058.49. The attorney drew the said deed, assignment of claim for contribution, and bill of sale of tools, etc., all absolute on their face, according to instructions given in the presence of both parties. These papers were duly signed by Jaikowski and acknowledged before a commissioner of deeds, the parties going to another office for the purpose of acknowledgment.

Shortly after the execution of these papers, and the same day, the parties again appeared in the office of Hall, the attorney aforesaid, and Swift directed Hall to draw up a bond for the conveyance of the two-thirds interest in the two mines, by Swift to Jaikowski, on or before the seventh day of December, A. D. 1881, in case the latter should pay him the sum of $11,058.49. This was accordingly done, signed by Swift, and delivered to Jaikowski. As soon as the papers were completed, Swift went with Hall to McCormick & Co., paid the interest on the $6,000 to September 1, 1881, amounting to $1,080, assumed in the name of J. O. Swift & Co., his firm, the payment of the note of $6,000, in consideration of which McCormick reduced the rate of interest to one per cent per month. On the same day Swift wrote to his firm at Ketchum stating that he had bought out Jaikowski, and directed them to charge the account due the firm from Jaikowski to his private account, which was accordingly done. Swift paid Jaikowski the sixty dollars to return to Idaho, and also paid for Jaikowski ten dollars to the attorney for drawing the papers.

In the latter part of September, or 1st of October, Swift went into possession of the mines and other property, and has continued to hold and work them until the present time. On the tenth day of October, 1881, Jaikowski executed to one Shaeffer, consideration being an open account, $432, or $452, and some

small sums of money, the amount of which the parties were not able to state, a deed for the two-thirds interest of the said mines, and assigned to him the bond. This sale, as Winters, plaintiff herein, testifies, was negotiated and promoted by him, and he states he had had his eye on this property as being valuable ever since he came to Wood River. On the 17th of November, 1881, Shaeffer executed to plaintiff, Winters, a deed of said property, and assigned to him the bond. On the third day of December, 1881, plaintiff, John B. Winters, commences this suit, files his complaint praying that said deed to Swift, of September 7, 1881, and bond to Jaikowski be declared a mortgage, and that said plaintiff be allowed to redeem; that, to ascertain the amount to be paid to Swift, an accounting be had between J. O. Swift & Co.—T. E. Clohecy and J. O. Swift—and Jaikowski, with various other prayers not now necessary to mention.

To the said complaint the defendant Swift answered, and averred that the said transaction that took place between himself and Jaikowski on said seventh day of September, 1881, was an absolute bargain and sale of all said Jaikowski's interest in said mines to defendant Swift; was never intended or understood by either party to be a mortgage; that said bond was executed and delivered to said Jaikowski to give him an opportunity to repurchase said mines if he desired so to do on or before the said seventh day of December, 1881. Defendant Clohecy answered, denying any interest in the transaction of September 7, 1881, or any interest in the result of the suit, substantially. The cause was tried before the court at the July term of the district court in and for Alturas county, and resulted in the following findings by the court as conclusions of law: "1. That the transaction of the 7th of September, 1881, between Jaikowski and the defendant Swift was one of bargain and sale, and not one of security for debt; there being no preexisting debt, no loan at the time, and no continuing indebtedness, there could be no mortgage, and the deed operated as an absolute sale and conveyance of the property to Swift; 2. That the bond from Swift to Jaikowski was not a defeasance of the deed, but simply an option to repurchase; 3. Neither Jaikowski nor his assigns having tendered the stipulated price within the period limited, the plaintiff is not entitled to relief; 4.

That, upon the whole case, the equities are with the defendants and they are entitled to judgment for the dismissal of plaintiff's bill of complaint and for their costs in the action." Plaintiff made a motion for a new trial, which motion was denied by the court. From the judgment of the court denying the motion for a new trial an appeal is taken to this court, and the following errors assigned: The court erred in its conclusions of law, and the same are not justified or supported by the evidence in the case, in this, to wit: "1. The transaction of the 7th of September, 1881, between Jaikowski and Swift was one of mortgage and not of sale, there being a pre-existing and continuing debt carrying interest beyond the seventh day of September, 1881; 2. The bond from Swift to Jaikowski being signed on the same day, and witnessed by the same parties, and acknowledged by and before the same officer, expressing the same consideration and for the same property as that in the deed from Jaikowski to Swift, was a defeasance to the deed and constitutes with it one instrument, viz., a mortgage, and the action being brought for a redemption and praying an account, no tender was necessary; 3. The promissory note of McCormick & Co. is usurious and no claim for interest thereon can be collected, as the same was made and delivered in this territory and not in Utah; 4. That upon the whole case the equities were with the plaintiff—in debt, pressed by his creditors, wanting time, everything tends to show that he was not a free man—and that in doubtful cases of like character the law always construes transactions of like character a mortgage and not a sale."

It will be at once seen that the main question, in short, almost the only question, before the court, is, Was the transaction between Swift and Jaikowski on the 7th of September, 1881, a sale, with a bond giving Jaikowski an option to repurchase, or was it a mortgage? In construing any instrument the first matter to be examined is the language of the instrument itself. The ordinary provision in a legal mortgage is that in case the grantor shall pay or cause to be paid the sum mentioned in the deed, with interest thereon, then the deed shall be void, otherwise, etc., or any words equivalent to these in the deed itself which shall indicate that it was intended as a security for money loaned, or security for the payment of

a debt by the parties to such instrument, then it is a mortgage. (1 Jones on Mortgages, sec. 242; *Adams v. Stevens,* 49 Me. 362.) Upon the most cursory reading it will be at once seen that the deed from Jaikowski to Swift, executed on the 7th of September, 1881, contains no such provision, and none equivalent thereto; it is a deed pure and simple; it is not claimed to be other than an ordinary deed in and of itself. Was there any separate deed executed at the time, or soon thereafter, which was intended by the parties as a defeasance?

It is claimed by the plaintiff that a bond for a deed, which was executed by Swift to Jaikowski soon after the deed was executed, was a defeasance, and was so intended by the parties thereto. The same rules of construction must be applied to this as to the other, that is—(1) Does the instrument itself show upon its face that it was so intended? Upon examination it will be seen that it makes no reference to the deed whatever. There is nothing in it which shows that it had any reference whatever to the deed that had before been executed. There is nothing in it which indicates that Jaikowski was indebted to Swift in any sum whatever; nor is there anything in the deed which indicates that Jaikowski is indebted to Swift. Taking both instruments together, and assuming that they were both executed at the same time, and there is nothing which shows that they were intended as a mortgage. There is no obligation on the part of Jaikowski to pay, and no continued indebtedness, and no intimation of such an obligation. In this case the defendant Swift had no remedy against the person of Jaikowski; there was nothing in either or both of the papers executed which would enable Swift to obtain a judgment against Jaikowski. There is no acknowledgment of a pre-existing debt, nor any covenant for repayment. These must exist in order to constitute it a mortgage. (See *Conway v. Alexander,* 7 Cranch, 236; *Henley v. Hotaling,* 41 Cal. 28; *Farmer v. Grose,* 42 Cal. 169; *Flagg v. Mann,* 14 Pick. 478.)

There being nothing in the deed, nothing in the bond, nothing in both, if construed together, to constitute the transaction a mortgage, we must next inquire into the intention of the parties at the time the deed was executed. This is to be gathered from the testimony. Hall, the attorney who drew the deed,

and who is a disinterested witness, testified that Swift and Jaikowski came into his office. "Swift, in presence of Jaikowski, said he had bought a two-thirds interest in North Star and American Eagle; asked me to draw a deed, which I did, and explained the legal effect thereof to Jaikowski. The parties agreed upon the consideration and I put it in. Some time after deed and bill of sale of cabin and tools were executed, Swift said he had concluded to give Jaikowski a bond, so that he might have a chance to turn round, which I then drew up, and Swift signed it. There was nothing said about its being intended as a mortgage or security for any debt. I would not be positive. When the deed was signed something was said about giving bond back. The bond was signed when Swift came back, within half an hour."

Swift, defendant, testifies Grosbeck and Jaikowski had been talking about a sale. Jaikowski told me about Grosbeck wanting the property. I went to Grosbeck and told him I would take half the mines if he would take half at $12,000. Grosbeck refused. Jaikowski offered both mines, North Star and American Eagle, for $12,000. I did all I could to assist him to sell the property. I offered to Chambers to buy the property with him, but he also refused. I went to several mining men after that for Jaikowski, but could get none of them to take it. Jaikowski came to me every day to do something with the property. On the 6th of September, 1881, Jaikowski said if I would pay the McCormick & Co. note and the J. O. Swift & Co. debt, and give him money enough to go back to Wood River, he would give me his entire interest in the two mines. I told him I would see McCormick, and that I might trade with him. Saw McCormick, and then told Jaikowski I would take property at his proposition. Deed was drawn up and acknowledged. I paid the interest on McCormick's note and assumed the payment of the note, assumed payment of J. O. Swift & Co. debt, paid Jaikowski sixty dollars and Hall ten dollars. When we were coming back from getting deed acknowledged I told Jaikowski I would give him a bond for ninety days if he wanted. We went back to Hall's office, and I did so. The transaction between us was understood to be a sale, and not a mortgage.

The bond was spoken of first when we were returning from having deed acknowledged.

On the twenty-eighth day of October, 1881, Jaikowski made an affidavit before Greenhow that the sale to Swift was absolute and *bona fide,* and was not made as a security for payment of any debt; that Shaeffer and Winters, plaintiff, had induced him while intoxicated to make an affidavit to the contrary.

Peter Wise testifies that between the 10th and 15th of September, 1881, Jaikowski, after his return from Salt Lake, said that he had sold North Star and American Eagle to Jim Swift, told me the terms, and said he was glad Swift had taken it, for he did not want McCormick to get it for the $6,000, and that Swift had given him a bond. Stiner testifies that he had a conversation with Jaikowski in September or October, 1881, in presence of Wise, in which Jaikowski said he had sold the North Star and American Eagle to J. O. Swift. Greenhow and Clohecy testify to similar conversations with Jaikowski, in which he told them he had sold all out to Swift.

On the part of the plaintiff, Jaikowski testifies as follows: On the 6th of September, 1881, I met Swift, and he said if I would give him security on the North Star and American Eagle mines, my claim against Owen Riley for his one-third due for all the debts incurred on the North Star, embracing the McCormick & Co. claim of $6,000 and interest, and the debt to Swift & Co., claimed to be $3,598.15, my cabin, tools, etc., ore on the dumps, he would pay off the debts and give me three months' time and if any ore was sold in the meantime he would give me credit. I told him "all right"; and he told me to meet him next day and see what he could do. I saw Swift next day. He said everything was ready. We went into the lawyer's office and sat down. The lawyer finished the papers; read them to me. I signed two papers then, and Swift signed one. Swift took them all and went to the commissioner or notary public. I signed the deed and bill of sale to Swift, and he signed the bond and gave it to me.

This is substantially all the testimony upon both sides with reference to the intention at the time of the execution of the deed and bond.

If we leave out the testimony of the two parties, Swift and Jaikowski, and take the instruments with the testimony of Hall as to what was said by the parties at the time of their execution, the manner of their execution, with the statement of Jaikowski to Stiner, Wise, Greenhow, and Clohecy, the conclusion is irresistible that the intention of the parties was to make an absolute sale with a bond allowing Jaikowski to repurchase within the time stipulated. The testimony of Swift is strongly corroborated by testimony of Hall and all the witnesses to whom Jaikowski had talked, and also by the affidavit made by Jaikowski before Greenhow, notary public, as well as the character of the instruments themselves. On the other hand, the testimony of Jaikowski with reference to the intention of the parties is not at all corroborated by any of the circumstances nor any witness. The proof is also complete that there was no negotiation between the parties respecting a loan of money; no proposition respecting a mortgage; all the conversation between Jaikowski and Swift and other parties was in reference to bargain and sale. During the summer before, Jaikowski, with those whom he had employed to assist him, were all the time trying to sell the mine. This deed was not given to secure a pre-existing debt. Swift had no interest in the McCormick & Co. debt, and only a partial interest in the debt to J. O. Swift & Co. These are all given as strong indications of absolute bargain and sale, and not of mortgage. (*Conway v. Alexander, supra.*) When there is no debt and no loan, an agreement to resell will not change an absolute conveyance into a mortgage (*Henley v. Hotaling,* 41 Cal. 25; *Glover v. Payn,* 19 Wend. 521; *Rich v. Doane,* 35 Vt. 125); and other cases cited in 41 Cal. 25. The question as to inadequacy of consideration cuts no figure whatever, as the complaint alleges that the mines at the date of the commencement of the suit, December 3, 1881, were worth $100,000. It is entirely immaterial what they were then worth. The only proper question would be what were they worth on the 7th of December, 1881—a matter not put in issue by the pleadings.

It is urged by the plaintiff that when the deed and defeasance are executed at the same time, or are agreed upon at the same time, it is a conclusion of law that they constitute a legal mort-

gage.  *Reitenbaugh v. Ludwick,* 31 Pa. St. 131, and *Wilson v. Shoenberger,* 31 Pa. St. 295, are cited to sustain the position. It is clear that when the separate instrument is intended as a defeasance by the parties that this principle is correct.   Both the cases cited are cases where the parties both intended the instruments as mortgages, and denominated them as such on the face of the instruments.   It is also indicated by the proof that one was a loan of money, and the other a loan of credit upon which to raise money.   Neither case is at all like the one at bar, and it is remarkable that they should be quoted as sustaining the principle that a separate agreement for repurchase is by operation of law a mortgage.

Again, it is asserted that at law an absolute deed and separate defeasance or agreement to reconvey, executed at the same time, amount to a mortgage, and a large number of cases are cited. It is only necessary to say that where the parties intended them to be such, and such intention is indicated either on the face of the instrument or by parol testimony, then they are such, and not otherwise, and this only is indicated by the cases cited, beyond question.   There is no case that we have yet been able to find which holds that an absolute deed, and a bond to convey the same property when not intended as mortgage, or security for money, as evidenced by the deed or parol testimony, is held by the court to be a mortgage.   A large number of cases which were cited by the plaintiff have been examined, and they all tend to the same point, that when the parties intend the instruments as simply a security for money, then they are construed as mortgages by the courts, and this intention of the parties is to be ascertained—*First,* from the instruments themselves; *secondly,* by parol testimony.

The third error assigned is that the promissory note given to McCormick & Co. is usurious and no claim for interest thereon can be collected, as the same was made and delivered in this territory, and not in Utah.   The evidence shows that Jaikowski executed a note in blank, and gave Clohecy a power of attorney, authorizing him to sell or mortgage his interest in the mines to raise money in Salt Lake City, Utah.   Clohecy was the agent of Jaikowski, and executed and delivered the note and trust

deed to McCormick & Co., in Utah. They are not usurious, therefore, being in accordance with the laws in force there.

It is therefore concluded by the court that the instrument executed by Jaikowski to Swift, September 7, 1881, is an absolute deed, as the result of a bargain and sale of the property therein described; that the bond given by Swift to Jaikowski, of the same date, is an agreement to convey a portion of the same property upon the payment of a sum of money at a stipulated time, which has not been either paid or tendered, and that they are not, and were not, intended to be a mortgage or security for money.

The judgment of the court below is therefore affirmed.

Prickett and Buck, JJ., concurred.