[No. 12053. Department Two. March 1, 1915.]

F. W. Olsen, *Plaintiff*, v. H. P. F. Smith *et al.*, *Defendants.*
J. W. Jones, *Petitioner, Appellant*, v. Frank L. Meares,
*as Receiver etc., Respondent.*[1]

Chattel Mortgages—Failure to Record—Labor Liens—Priority—Statutes—Construction. Although, under Rem. & Bal. Code, § 3660, providing that a chattel mortgage is void as against creditors unless recorded, a tardily recorded mortgage is prior to the rights of subsequent general creditors who have not acquired a specific lien on the property prior to the recording, a labor creditor performing labor during the interim between the execution and tardy recording of a chattel mortgage has an inchoate right of lien upon the specific property used in the operation of the business in which the labor was performed, for a period of ninety days after ceasing work, as provided and accorded to him by Id., §§ 1149, 1150; especially in view of Id., §§ 1153, which provides that the receiver or assignee of the debtor in such cases shall "pay all claims for which a lien could be filed" under the labor lien law before the payment of other debts; therefore, such labor liens, when matured by a receivership within the ninety-day period for perfecting the lien, stand upon a different footing from that of general creditors, and are superior to the lien of the chattel mortgage, of which the claimants had no notice when the labor was performed.

Same. The fact that Rem. & Bal. Code, § 1132, declares that a mechanics' lien is preferred to an incumbrance attaching *subsequent to the commencement of the work* for which the lien is given, and also to any incumbrance which may have attached *previously to the time* and was not filed for record until after that time, of which the lien claimant has no notice, has no like restrictive bearing, as to prior unrecorded chattel mortgages, on the later act, Id., § 1149, which accords a lien for labor performed within six months next preceding the filing of the claim of lien, and declares that "no mortgage, deed of trust or conveyance shall defeat or take precedence over said lien;" since the terms of the later act are even broader and capable of giving the labor lien precedence over all prior mortgages, although it has been construed as not intended to give to labor liens a right of priority over mortgages executed prior to the time of the commencement of the work for which the lien was filed.

Appeal from an order of the superior court for King county, Albertson, J., entered April 6, 1914, in favor of the

[1] Reported in 146 Pac. 572.

defendant, in proceedings to determine the priority between labor liens and a chattel mortgage, after a hearing before the court.   Affirmed.

*Chauncy L. Baxter* and *J. Will Jones*, for appellant.
*Frank A. Paul*, for respondent.

ELLIS, J.—This case presents a contest for priority between labor liens and a tardily recorded chattel mortgage. The labor was performed in the interval between the date of the execution of the mortgage and the date when it was filed for record.   The conceded facts are these:  On May 29, 1912, H. P. F. Smith, doing business as Bitter Lake Lumber Company, executed and delivered to Norwood Lumber Company, a corporation, two promissory notes, each for the sum of $225, and a chattel mortgage to secure the same covering a team of horses, a harness and a wagon.   By oversight, the Norwood Lumber Company failed to record its chattel mortgage until November 12, 1912.   Prior to that time, the lien claimants had no notice of the mortgage.   The Bitter Lake Lumber Company was then hopelessly insolvent.   It ceased business about December 15, 1912, and on January 3, 1913, a receiver was appointed at the suit of labor claimants.   The period of ninety days had not then elapsed since the last labor performed by any of the claimants.   No notice of claim of lien for the labor had been filed prior to the filing of the chattel mortgage, but it is conceded that, under the statute, the appointment of the receiver matured the liens with like effect as if lien claims had been filed as of that date.   The receiver took possession of the mortgaged property, sold it for the sum of $250, and now has the money. The two notes and the chattel mortgage were assigned by the Norwood Lumber Company to the petitioner, J. W. Jones, for value, but after the maturity of the notes.   On January 30, 1914, Jones, by petition, secured an order directing the receiver to show cause why he should not pay the proceeds

of the mortgaged property to the petitioner to apply on his notes. Upon the hearing of this show cause order, the trial court held that the mortgagee had lost his priority by failing to file his mortgage within the statutory ten days after execution and delivery (Rem. & Bal. Code, § 3660 [P. C. 349 § 3]), and entered an order to that effect. The petitioner, Jones, appeals.

The record presents this single question: Is the lien of a laborer who performs work in the interval between the execution of a chattel mortgage and the time when it was tardily recorded postponed to the lien of the mortgage because he has filed no claim of lien, though the statutory period for so doing had not elapsed? The question is a new one in this state and must be solved in the main by an analysis of our own statute in the light of our own decisions.

The appellant first contends that the laborer in such a case stands in the same relation to the unrecorded chattel mortgage upon lienable property as that occupied by a general creditor who, in the interim between the making and the recording of the mortgage, extends credit to the property owner but has acquired no specific lien by attachment or otherwise. In order to a clear conception of the difference, if there is a difference, between labor creditors prior to the filing of their liens, and general creditors prior to attachment or judgment, we must consider their relation to the specific property by the statute made subject to liens for labor.

The liens here in question are governed by chapter 4, title 8, Rem. & Bal. Code, to which we shall refer by section numbers. Section 1149 gives a lien for labor upon all the real and personal property of the person, company or corporation used in the operation of the business in and about which the labor was performed, and for labor performed within six months next preceding the filing of a claim of lien. Section 1150 in effect makes the continued existence of the lien conditioned upon the filing of a notice of claim of lien

within ninety days after the claimant has ceased to perform the labor, and on the service of a copy of the notice upon the person, company or corporation within thirty days after the claim of lien is filed for record. The clear effect of these sections is to create an inchoate right of lien upon specific property in favor of laborers for ninety days prior to the filing of any lien notice. This marks a clear distinction between debts for labor and other unsecured debts; between labor creditors and general creditors. The latter have no specific lien, inchoate or otherwise, until suit and attachment or judgment. Section 1153 requires the receiver or assignee, appointed for any person, company or corporation, "to pay all claims for which a lien could be filed" under the labor lien law "before the payment of any other debts or claims other than operating expenses." This section further emphasizes and vitalizes the difference between labor claimants and other creditors in their rights and relations to the specific property. It not only recognizes the inchoate lien of the laborer created by the prior sections, but gives it precedence and makes it effective as against claims of general creditors for the full ninety days accorded for the filing of the lien notice. It is clear, therefore, that the mere definition of rights in given property as between general creditors of the owner and the holder of an unrecorded chattel mortgage thereon, does not necessarily, nor even impliedly, define rights as between the holder of such an unrecorded mortgage and the claimant of a lien for labor, even prior to the filing of the lien notice or the maturity of his lien by the property owner's insolvency.

The appellant's argument, based upon our recent decision in *Pacific Coast Biscuit Co. v. Perry*, 77 Wash. 352, 137 Pac. 483, overruling *Willamette Casket Co. v. Cross Undertaking Co.*, 12 Wash. 190, 40 Pac. 729, is therefore stillborn. It lacks the vitalizing element of analogy in the relation of the parties there and the parties here to the respective subject-matters. In the *Perry* case, we held that, though

Rem. & Bal. Code, § 3660 (P. C. 340 § 67), provides that a chattel mortgage is void as against creditors unless recorded, an unrecorded chattel mortgage is valid as between the parties and creditors subsequent to its execution who had acquired no specific lien upon the property up to the time when the mortgage was finally filed for record. This, on the specific ground that the belated filing of the old mortgage had the same effect, as against general creditors, that a new mortgage executed and filed on that day would have had. It therefore took precedence over the claims of general creditors who had acquired no lien upon any specific property, though they had extended a general credit in the interval between the making and the filing of the chattel mortgage. The clear inference from this reasoning is that had these general creditors acquired, in the interim, any sort of lien upon the specific property, they would have been preferred to the lien of the chattel mortgage. In the case here, the laborers had acquired, in the interim, subsisting rights of liens upon the specific property. They do not fall within the statutory nonpreferred class of lienless general creditors.

The case of *American Loan & Trust Co. v. Olympia Light & Power Co.*, 72 Fed. 620, cited by the appellant, announces the same view and goes no further than the decision in the *Perry* case. The case of *Urquhart v. Coss*, 60 Wash. 249, 110 Pac. 1001, rests upon the same basis. It merely sustained the right of the holder of an unrecorded chattel mortgage who had taken possession of the mortgaged property as superior to the rights of general creditors who had not, prior to that time, obtained any lien by attachment or otherwise. The case of *Heal v. Evans Creek Coal & Coke Co.*, 71 Wash. 225, 128 Pac. 211, is even more remote from the question here involved. The laborers there had lost their inchoate liens on the personal property by their failure to comply with § 1150 of the statute by serving a copy of their notice of claim of lien on the owner within thirty days after it was filed for record. We expressly withheld any

opinion on the question of priority of the labor claimants if they had complied with the statute. Clearly, none of the authorities cited by the appellant sustain the view that labor creditors, prior to the filing of their claims of lien, and general creditors, are in every sense in the same category. As we have seen, the statute itself clearly shows that they are not.

While certain expressions in the case of *Blumauer v. Clock*, 24 Wash. 596, 64 Pac. 844, 85 Am. St. 966, seem to militate against this view, that case, on careful analysis, holds no more than that the labor creditor is a creditor with all of the rights of a general creditor. It does not hold that he is simply a general creditor without additional rights. The question here presented was not involved.

Appellant's second contention, if we have clearly caught his meaning, is that even if the lien creditor differs from the general creditor in that he has an inchoate lien from the date of the performance of the work, his interest is inferior to the lien of a chattel mortgage executed prior to the commencement of the work but recorded after its performance and before the filing of the lien notice, even though the labor claimant had no notice of the mortgage when he performed the work. This is based upon the contrast between Rem. & Bal. Code, § 1132 (P. C. 309 § 61), touching the priority of mechanics' liens, and Rem. & Bal. Code, § 1149 (P. C. 309 § 117), touching the priority of labor liens. Section 1132 expressly declares the mechanics' lien a preferred lien to any incumbrance attaching subsequent to the commencement of the work for which the lien is given, and also to any incumbrance which may have attached previously to the time and was not filed for record until after that time, of which the lien claimant has no notice. Section 1149, the labor lien law, accords a lien for labor performed within six months next preceding the filing of the claim of lien, and declares: "no mortgage, deed of trust, or conveyance shall defeat or take precedence over said lien." The quoted language is obvi-

ously capable of a construction which would give the labor
lien precedence over all prior mortgages. This last section,
however, has been construed as not intended to give to labor
liens filed in accordance with its provisions "a right of pri-
ority over mortgages which had been executed *and recorded*
prior to the time of the commencement of the work for which
the liens were filed." We italicize for emphasis. *Fitch v.
Applegate*, 24 Wash. 25, 64 Pac. 147. This is a very differ-
ent thing from saying that the statute does not extend the
priority of the lien over such antecedent mortgages *not re-
corded* prior to the commencement of the work. That de-
cision carries the limitation of the language of the statute,
capable of a much broader construction, quite as far as
equity and the liberal policy of the lien law will permit. To
carry the limitation still farther and give a priority to un-
recorded mortgages, would set a premium on laches and en-
courage secret liens. It would invite abuses and frauds im-
possible of detection. It would enable the property owner
by a secret, unrecorded and collusive mortgage for the full
value of his property to defeat his laborers of their hire.
On the other hand, to hold the mortgagee to his plain stat-
utory duty of giving notice of his interest by recording his
mortgage is no hardship. When he lends his money to, and
takes his mortgage from, a going concern, he knows that
its laborers will be entitled to liens for their pay. He then
has the notice which his failure to record his mortgage will
deprive the laborers of. It is no answer to say that laborers
seldom examine the records and would not receive notice in
any event. They at least have the right to examine the rec-
ords, which is more to the point, and the records should
therefore speak the whole truth.

It is argued that, since the mechanics' lien law, § 1132,
was passed in 1893, and the labor lien law, § 1149, in 1897,
the legislature knew of the more specific provision of the
earlier law, and if the same rule of priority had been in-
tended, the same specific terms would have been used in the

later law.  In view of the use in the later act of language
capable of even a broader construction than the more spe-
cific terms of the mechanics' lien law, that argument would
have some force as showing that a broader priority of lien
was intended for labor liens than for mechanics' liens.  Ob-
viously, it has no tendency to show that a narrower priority
was intended.  The advised use of the broader terms can
hardly indicate a narrower intention.

The limitation of the broad language of the labor lien
law touching priority, imposed by the decision in *Fitch v.
Applegate, supra*, makes the whole law of preference as to
every class of liens homogeneous.  It gives the labor lien
claimant the same priority expressly accorded to the mechanic
and materialman.  To impose a further limitation, as urged
by appellant, would commit gratuitous violence to the terms
of the act in order to discriminate against labor claimants,
who ought to be regarded with at least as much considera-
tion as any other class.

We conclude that a labor creditor, during the ninety days
accorded for the filing of his lien claim, occupies a different
relation to a prior unrecorded chattel mortgage from that
held by a general creditor, in that he has an inchoate right
of lien which may not be defeated by the tardy recording of
the mortgage within the ninety days after the last labor was
performed.

We further conclude that the lien for labor performed in
the interim between the execution and tardy filing of a chat-
tel mortgage, when perfected either by filing a claim of lien
within ninety days after the last labor performed, or ma-
tured by the property owner's assignment or passage into
a receivership within that period, is entitled to preference
over the lien of the mortgage.

We have examined the many authorities cited from other
jurisdictions, but a detailed review would be of no profit,
in view of the compelling force of our own labor lien statute
which declares that "no mortgage, deed of trust or convey-

ance shall defeat or take precedence over said lien." It must suffice to say that these decisions either construe lien laws in which no similar provision is found or are logically unsound.

Affirmed.

CROW, MAIN, MOUNT, and FULLERTON, JJ., concur.