**Warren Vivian LAMB, Appellant,**

v.

**ED MAHER, INC., Appellee.**

No. 16161.

Court of Civil Appeals of Texas.

Dallas.

April 26, 1963.

Rehearing Denied May 24, 1963.

Kilgore & Kilgore, Dallas, for appellant.

McKool & McKool and Mike Aranson, Dallas, for appellee.

WILLIAMS, Justice.

Appeal by Warren V. Lamb, defendant below, from a judgment in favor of Ed Maher, Inc., plaintiff below, for the sum of $254.93, rendered in a suit for deficiency judgment following the repossession and sale of an automobile theretofore sold by Maher to Lamb. The sole question presented here is whether the contract between appellant and appellee was tainted with usury. · Appellant contends that he bought the automobile for a stated cash price and that usurious time credit charges were added. Appellee contends that appellant purchased the automobile for a time credit price and there is no usury.

## FACTS

The evidence on the trial of this case is undisputed. It consists of testimony of Frank Langford, assistant manager of Ed Maher, Inc., and Warren V. Lamb, together with various written exhibits. Lamb testified that he bought the automobile from Ed Maher in December of 1957; that he was quoted a price of $2595.00 by the salesman. He said they had "a good deal of negotiations with reference to the car * * as to the price and various other things;" that the main issue was the monthly payments. He said he wanted to keep his monthly payments within the limits of his salary as a telephone linesman. He testified

he signed the documents presented to him and took the car. He further identified Exhibit One and said he recognized the figures thereon when he signed same; that he signed and agreed to Exhibit One.

Exhibit One referred to in the preceding testimony, was identified by Lamb as the purchase agreement and the following is a substantial copy of the pertinent portion thereof:

| "Price | | $2,595.00 |
|---|---|---|
| License | | 30.00 |
| Total | | 2,625.00 |
| Discount | $395.00 | |
| Tradein | 250.00 | |
| Total credit | | · 645.00 |
| Balance | | 1,980.00 |
| Insurance | | 208.00 |
| Total | | 2,188.00 |
| Time Sales Charges | | 460.52 |
| Note First National Bank | | $2,648.52 |
| Payments 36 @ $73.57 | | |
| 1st. payment due 2/1/58." | | |

Exhibit Three, a conditional sales contract, was identified and introduced in evidence, the material portions of which are copied as follows:

"Whereas the undersigned purchaser has been quoted a cash price of $_____ for the automobile described below and has likewise been quoted a time-selling price as below stated and has elected to buy said automobile for such time-selling price: Now therefore, the undersigned seller hereby sells, and the undersigned purchaser hereby purchases on a time-basis, subject to the terms and conditions hereinafter set forth, the following property in its present condition, complete with standard attachments and equipment, delivery and acceptance of which is hereby acknowledged by purchaser, viz.:" (followed by a description of the automobile) "for a time-selling price of $3,293.52 [1] which said sum the pur-

---

1. This figure is evidently the sum of $2,648.52 plus $645.00.

chaser hereby promises and agrees to pay to the order of seller as follows: $645.00 in cash or the equivalent before delivery of said automobile and at the time of the execution of this agreement, leaving a deferred balance of $2,648.52, which purchaser promises to pay to the order of seller at First National Bank in Dallas, Dallas, Texas, in 36 consecutive monthly installments beginning February 1st, 1958, 36 of said installments being in the amount of $73.57 and the final installment being in an amount equal to the deferred balance remaining unpaid, with interest thereon after maturity at 10% per annum, and if this contract be placed with an attorney for collection, 10% of the amount due hereunder, as attorney's fee."

This Exhibit Three bears the signature of Warren V. Lamb. His testimony concerning the signing of this exhibit three was: that when he signed same it was not filled in; that he signed it in blank before the figure had been written in. He also said he never read the instrument either before or after he signed it

He further testified:

"Q Were you also aware that the contract stated that the contract could be filled in by the purchaser in line with the agreement between the parties if there were blanks left—correction by the seller. Were you aware that the contract stated, that the conditional sales contract, Plaintiff's Exhibit Three, stated that blanks left in that conditional sales contract could be filled in by the seller in line with the agreement reached between the parties?

"A I didn't know it, but that sounds fair."

Any doubt that may have existed concerning any discrepancies between the figures contained in Exhibit One and Ex-

hibit Three was set at rest by a stipulation of Lamb's attorney. While Mr. Langford was testifying he was asked whether it was normal and customary practice for figures on the contract (Exhibit One) to be filled in the conditional sales contract (Exhibit Three) identical with the figures on the agreement between the parties; he responded in the affirmative. Thereupon Lamb's attorney stipulated that the figures on Exhibit One had been correctly filled in on Exhibit Three.

Mr. Langford testified that he had no personal knowledge of the transaction and that he was testifying for the purpose of identifying the records and stating the general custom that existed relating to sales. He identified Exhibit One, the sales contract, and the various figures contained thereon, stating that the sum of $460.52, called the time sales charge, was computed ordinarily from a rate book and represented a little more than 7% interest on $2,188.00 over a 36 month period.

OPINION

The sole question presented by this appeal is one of usury *vel non*. Appellant in his one point of error, contends that since the contract between appellant and appellee is usurious all of the payments and credits made by appellant should be allocated to principal and when such allocation is made, nothing remains due by appellant to appellee. Appellant, in his supplemental brief, correctly states the issue to be decided; "There is no doubt that the courts of this State recognize that where a sale is made for an agreed time credit price, the fact that that price may substantially exceed 'cash' price on the same item will not taint the transaction with usury. The fallacy in the appellee's brief is the appellee's assumption that the record in this case contains evidence sufficient to support a finding that a time credit price was agreed upon." Also: "Consequently, there is no evidence in this record that will support the trial court's implied finding that the car was sold for a higher time credit price,

but all of the evidence is entirely to the contrary."

■ In our efforts to determine the solution to this "no evidence" it must be observed that this judgment was rendered by the trial court, without a jury, and no findings of fact or conclusions of law were requested and none were filed. The court's judgment therefore implied all necessary fact findings in support of the judgment and, upon review we must only consider that evidence most favorable to the issue and disregard entirely that which is opposed to it, or contradictory in its nature. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Austin v. Cochran, Tex.Com.App., 2 S.W.2d 831, 832; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; Gulf C. S. F. Ry. Co. v. Deen, 158 Tex. 466, 312 S.W.2d 933; Faulk v. Futch, 147 Tex. 253, 214 S.W.2d 614, 5 A.L.R.2d 963.

■ Accordingly, it is not our province or privilege to review all of the evidence in this case and conclude what we, had we been sitting as trial judge, would have done. As was aptly stated by Chief Justice McDonald in Associates Investment, Inc., v. Thomas, Tex.Civ.App., 210 S.W.2d 413:

- "The testimony was in some degree conflicting, but on appeal we must give weight to the testimony that tends to support the judgment, and view it in the light most favorable to appellee. Express findings, and findings implied from the nature of the judgment rendered, will not be disturbed on appeal where there is some evidence to support them, even though the appellate court might have reached a different conclusion therefrom."

The applicable basic law covering the factual situation presented by this appeal is, in our opinion, contained in the opinion of this Court in Rattan v. Commercial Credit Company, Tex.Civ.App., 131 S.W.2d 399, wr. ref. In that case Rattan purchased an automobile for the sum of $1310. At the time of purchase, he was put to an election as to whether he would pay cash of $1125, or a deferred credit price of $1310 for the automobile. He knew there was a difference in the prices—that the credit price was higher than the cash price. Rattan chose the credit price, and, upon default, suit resulted. Rattan contended that the transaction is usurious, in that the $100 added to the cash price balance of $750, plus $86 for insurance, payable in monthly installments of $39 each over a period of twenty-one months, is a charge of more than 10% interest. We pointed out there that the transaction was simply a sale for credit at a higher price than for cash, calculated on a known basis for the seller to realize a cash price of the automobile by subsequent sale of the note and mortgage through commercial channels. This rule was announced by Chief Justice Bond:

"Where, in a bona fide sale, no loan of money is involved, a purchaser buys an automobile from a regular automobile dealer for a credit price, known to the purchaser to be higher than the cash price, and signs a note and chattel mortgage for the unpaid balance, such transaction is an actual sale of the automobile on time or credit selling price, mutually agreed upon by the parties, and such note and mortgage thus given for the balance, providing for interest, only in case of default, at the highest legal rate, is not usurious. A seller may demand one price for cash, and another and greater price upon credit, and it would not be usury. Graham v. Universal Credit Co. Inc., Tex. Civ.App., 63 S.W.2d 727; Baldwin v. Motor Inv. Co., Tex.Civ.App., 89 S.W.2d 1076; Burkitt v. McDonald, 26 Tex.Civ.App. 426, 64 S.W. 694; Oil City Motor Co. v. C. I. T. Corp., 10 Cir., 76 F.2d 589, 104 A.L.R. 240; General Motors Acceptance Corp. v. Mid-West Chevrolet Co., 10 Cir., 66 F.2d 1; Commercial Credit Co. v. Tar-

water, 215 Ala. 123, 110 So. 39, 48 A.L.R. 1437. Such is this case."

See also the case of Standard Supply & Hardware Co. v. Christian, etc., Tex.Civ. App., wr. ref., 183 S.W.2d 657 and Gill v. Universal C. I. T. Credit Corp., Tex.Civ. App., 282 S.W.2d 401, wr. ref. n. r. e.

Art. 5074a, Vernon's Ann.Texas St. entitled "Cash and time prices in sales of motor vehicles" provides in Sec. 1 thereof, as follows:

"Whereas, it has heretofore been recognized by the courts of this State that a seller may have a cash price for his commodities and may have also a different and higher time credit price for the same commodity, and that such difference in said prices do not constitute interest for the forbearance, use or detention of money or credit."

The statute then proceeds to provide that a seller of a motor vehicle shall furnish to the purchaser a disclosure of the items of cost which the seller has taken into consideration in arriving at the time credit price for which the said motor vehicle has been sold. Then in Sec. 4 of the statute it is provided:

"If the seller shall have furnished the purchaser an itemization in writing of such cost items as the seller has taken into consideration in arriving at the time credit price, and the purchaser has signed a written contract evidencing the agreement that the motor vehicle [was] purchased under a time credit price, *said written contract shall constitute prima facie evidence of the fact that said motor vehicle was sold for a time credit price.*" (Emphasis ours)

Having applied the undisputed evidence in this case, as related above to what we consider the applicable law controlling such situation, and obeying the mandate of the Supreme Court set forth in the cases cited above directing us to affirm the trial court's judgment if there is any evidence of probative force to substantiate same, and discarding entirely all adverse evidence, we arrive at the conclusion that appellant's contention of "no evidence" can not be sustained. We are of the opinion that a review of the testimony as set forth above, both direct and circumstantial, impels the conclusion that there is evidence to support the trial court's implied findings that no usury is in this case. We think that the testimony reveals that Lamb, as well as Rattan, was given a choice of paying cash for the automobile or paying a credit price therefor which was in excess of the cash price and included a time sales charge. Appellee complied with the provisions of Sec. 4 of Art. 5074a, V.A.C.S. by providing appellant with an itemization, as revealed by Exhibit One, thereby establishing a prima facie case. Appellant testified that he was quoted one price but he immediately was concerned with the amount of monthly payments, thereby evidencing clearly that he did not intend to choose the cash price but wanted to accept the credit price. He freely admits that he was furnished the information and knew what he was doing when he executed Exhibit One. His attorney stipulated that the facts and figures contained on Exhibit One were correctly transcribed on Exhibit Three, the conditional sales contract. The conditional sales contract provides specifically that Lamb was given a choice of the cash price or the credit price and he chose the credit price. True, Lamb says that he did not read the conditional sales contract after he signed the same, but this fact does not excuse him from the binding provisions thereof.

Finding, as we do, evidence of probative force to support the implied findings of the trial court, the judgment of the trial court is affirmed.

Affirmed.