No. 20884.

THEODORE ROOSEVELT AGENCY, INC., *v.*
GENERAL MOTORS ACCEPTANCE CORPORATION.
(398 P.2d 965)

Decided January 4, 1965.     Rehearing denied February 23, 1965.

THOMAS L. FORD, KENNETH L. KRIPKE, for plaintiff in error.

ROBERT D. CHARLTON, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

In Colo. Sess. Laws 1913, ch. 108, appears "AN ACT To Regulate The Business Of Loaning Money On Security Of Any Kind * * *." The pertinent part of this statute reads:

"Section 1. That hereafter it shall be unlawful, without first procuring the license hereinafter provided for, to engage in the business of making loans of money or of personal credit, on any security of any kind, direct or collateral, tangible or intangible, upon which there is directly or indirectly charged or received interest, discount or consideration greater than twelve per centum per annum."

With no appreciable changes, as to the problem involved in the instant case, the 1913 Loan Law appears in C.R.S. '53, 73-3-1 et seq., which was in effect when this action was begun.

There also appears in Colo. Sess. Laws 1951, ch. 81, a statute under the general heading of "AUTOMOBILES AND OTHER MOTOR VEHICLES" with the caption

"Retail Motor Vehicle Installment Sales Act." This statute appears, with minor modifications, as part of C.R.S. '53, 13-16. The latter law requires that installment sales of automobiles be in writing. It also provides in great detail various requirements including, precisely, how the "time price differential" is to be computed; and in addition, it provides specifically for the licensing of sales finance companies.

The determinative questions on this writ of error are whether a retail automobile dealer or his assignee is bound not only by C.R.S. '53, 13-16, but also, whether he must comply with the licensing requirements of C.R.S. '53, 73-3-1 et seq.; or, failing this, suffer the treble damage penalty of the latter statute if he charges in excess of twelve per cent interest per annum.

Plaintiff in error, who was plaintiff below, is the assignee of various retail automobile installment sales contracts. It contends that the 1913 Loan Law applies as well as the 1951 Act, as amended; that the two must and can be construed together. Defendant in error, the purchaser of the contracts sued on by plaintiff in error, urged in the trial court and urges here, however, that only C.R.S. '53, 13-16 applies, and, that in any event, plaintiff in error is not a proper holder of the claims for various reasons. We shall refer to the parties hereafter as plaintiff and defendant.

The trial court granted defendant's motion for a summary judgment and plaintiff seeks relief by writ of error.

Plaintiff's position is that the 1913 Loan Law pertains to "all transactions regardless of the amount involved"; that the 1951 Act, as amended, relating to installment sales, did "not specifically repeal any other acts which might be in conflict"; and, that "No rate was set" in the later statute; thus, the 1913 Loan Law interest rate would apply. Much is made of the use of the expression in C.R.S. '53, 13-16-6 (6) (a) (1960 Perm. Supp.) of the wording that reads *"Notwithstanding* the provisions of

240

any statute, the time price differential in connection with the retail installment sale of a motor vehicle *shall not exceed* the following: \* \* \*." (Emphasis supplied.)

■ An examination of both the 1913 Loan Law and the subsequent installment financing statute leads us to the conclusion that the ruling of the trial court was correct. The "time price differential" in the installment statute allows the payment of sums of money in excess of the cash price of the commodity sold. Such a difference between a cash and a credit price has been held not to be interest in this type of contract and is not within the terms of the usury laws. E.g. *Daniels v. Fenton*, 97 Colo. 409, 50 P.2d 62 (1935); *Bell v. Idaho Finance Co., et al.*, 255 P.2d 715 (Ida. 1953); *Richardson v. C.I.T. Corporation*, 5 S.E. (2d) 250 (Ga. App. 1939); 91 C.J.S., *Usury*, § 16.

■ As to the statutory clause which begins "Notwithstanding," a reading of the entire act shows that it was meant to *exclude* — not include — the operation of other statutes. The word "Notwithstanding" is one in opposition to, and not one of compatibility with, another statute. See *The New Roget's Thesaurus* (1961). In fact, the word "Notwithstanding" actually means "in spite of"; see *Webster's New International Dictionary* (1958).

If it had been the legislature's intent to limit the sums to be collected by virtue of the "time price differential" it could easily have done so by providing, specifically, that it should not exceed a certain percentage of return on the cash price. This the legislature did not do. It also could have used a word with a contrary meaning in place of "Notwithstanding"; this it did not do either.

■ In addition, C.R.S. '53, 13-16-2 and 3 provide detailed methods for the licensing of sales finance companies and the suspension and revocation of licenses. The specified requirements are definitive and inclusive and no logical reason or statutory rule of construction com-

mands that a second license under the 1913 Loan Law is required for those doing business as sales finance companies under the 1951 Act, as amended.

We conclude that the 1951 Retail Installment Sales Law, as amended, by its licensing provision and by creating a complete method for payment of the agreed price on retail automobile sales contracts, created an exclusive method, not subject to supplementation by the 1913 Loan Law.

In view of our conclusion as to the inapplicability of the 1913 Loan Law we need not consider the issue of assignability of the vendee's rights to this plaintiff.

The judgment is affirmed.