**Elaine RUSSELL, Appellant,**

v.

**UNIVERSAL ACCEPTANCE CORPORA-
TION, Appellee.**

**No. 3656.**

District of Columbia Court of Appeals.

Argued April 5, 1965.

Decided June 16, 1965.

Robert C. Handwerk, Washington, D. C., for appellant.

Bernard T. Levin, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge:

Appellee instituted this action to recover the balance due on a promissory note executed by appellant for the purchase of a wig and services from Wigtyme, Inc. Appellant answered alleging that she was not indebted to appellee since there had been a failure of consideration. The trial court found, however, that appellee was a holder in due course and awarded judgment for the amount in default. Appellant challenges the decision of the court.

Appellant purchased the wig in March 1963. The price was $336 and included Wigtyme's promise to provide forty-eight "servicings" over a four-year period. As payment, she executed a promissory note payable in twenty-four monthly installments of $14 each. The note was sub-

sequently transferred to appellee on April 2, 1963, pursuant to a contract which the two companies had signed the previous February. Under this contract Wigtyme was to sell appellee notes such as appellant's for $270, $120 of which was to be credited to a reserve account held by appellee against possible losses. It further provided that when a note was paid in full appellee would retain $20 of the reserve and remit the balance to the wig company or hold it against future losses. The result was that appellee agreed to purchase Wigtyme's $336 notes at a discount of $86, although only $150 would actually change hands at the time of the transfer. The agreement left Wigtyme free to sell its notes to other purchasers, and appellee was not obligated to buy the notes proffered by Wigtyme. The evidence established that some notes were refused by appellee and that some were sold elsewhere.

After the transfer of the note to appellee, appellant received a notice from one United Securities Corporation that it was the holder of her note, and she made several payments to that company. The evidence established, and the trial court found, that United Securities Corporation and appellee were one and the same company. It is clear from the record that the note was transferred to appellee, Universal Acceptance Corporation, whch has held it ever since. Payments made in the name of United Securities Corporation were credited to appellant's account on its books. There is thus no merit to her contention that appellee is not the holder of the note.

▉ In October 1963 Wigtyme went out of business and it became impossible for appellant to obtain the wig "servicings" for which she had contracted. After that occurrence she made no further payments on her note, contending that this failure of consideration is a good defense against appellee's claim for the amount in default. It is well settled that failure of consideration is no defense against a holder in due course even if it would have been against

the payee of the note. Fabrizio v. Anderson, D.C.Mun.App., 62 A.2d 314 (1948); Interstate Bankers Corporation v. Kennedy, D.C.Mun.App., 33 A.2d 165 (1943). This is true even if the purchaser of the note had full knowledge at the time of the purchase that the consideration for it was executory and had not yet been performed, so long as he had no knowledge of any breach thereof. Thal v. Credit Alliance Corporation, 64 App.D.C. 328, 78 F.2d 212, 100 A.L.R. 1354, cert. denied 296 U.S. 598, 56 S.Ct. 114, 80 L.Ed. 423 (1935); Fabrizio v. Anderson, supra; Gross v. Delaney, D.C.Mun.App., 34 A.2d 629 (1943). Thus, unless appellee is found not to be a holder in due course, it is entitled to the full amount due on the note.

▉ Appellant alleges that appellee could not have the status of a holder in due course because it either took her note in bad faith or was a party to her original contract with Wigtyme. She contends that the entire transaction was actually a mask for a usurious loan similar to that found in Beatty v. Franklin Investment Company, 115 U.S.App.D.C. 311, 319 F.2d 712 (1963). In that case, the maker of the note was charged $150 to finance a cash balance of $301, and the finance company was found not to be a holder of the note in due course because it had notice that usury was embraced therein. That is not the situation here, however. Wigtyme's contract provided for only one price, and whether appellant had paid in one payment or over a two-year period, the price would have been the same; no finance charge was included.

It is true that a notation "F. C. 66" was written on one of appellee's records, but the court was not required to find, as appellant urges, that this established a usurious finance charge. Whether a transaction is a bona fide sale or a loan and a cloak for usury is largely a factual question, and we cannot find that the trial court's determination was erroneous. Millard v. Lorain Investment Corporation, D.C.Mun. App., 184 A.2d 630 (1962); Brooks v. Auto

Wholesalers, D.C.Mun.App., 101 A.2d 255 (1953).

The purchase of a negotiable note at a high discount has been held to be evidence tending to show bad faith or fraud on the part of the purchaser, especially when tied in with other suspicious circumstances. Hill v. Hawes, 79 U.S.App.D.C. 168, 144 F.2d 511 (1944). However, the discount at which appellee bought appellant's note, about twenty-five percent, was not so high as to prevent it from becoming a holder in due course. See Wilson v. Gorden, D.C.Mun.App., 91 A.2d 329 (1952); Fabrizio v. Anderson, supra. The record does not support appellant's contention that the discount was actually fifty-five percent. She alleges that the $120 reserve fund was a sham and not part of the purchase price of the note. However, such reserves against losses are not uncommon and serve to facilitate the negotiability of financial paper, encouraging finance companies to provide merchants with ready cash. Moreover, the United States Internal Revenue Service placed a levy on the reserve fund as an asset of Wigtyme and appellee acknowledged to the government that the funds in its possession did belong to the wig company.

Appellant attempts to demonstrate that such a close association between appellee and Wigtyme existed as to make the former a party to the contract with her and thus subject to the defense of failure of consideration. She shows that appellee's president was acquainted with two of the incorporators of Wigtyme and that in July 1963 these three persons formed another wig company. She further claims that the contractual relationship between appellee and Wigtyme and the fact that the note was payable at appellee's office establish that appellee was not a holder in due course. While it is true that these circumstances may create some suspicion of fraud, more than suspicion was needed to upset the proof offered by appellee that it was a holder in due course. "[A]n endorsee's

bad faith or fraud in acquiring a negotiable note can never be assumed but must be shown by clear and unequivocal testimony * * *." Wilson v. Gorden, supra, 91 A.2d at 330; Eastern Acceptance Corporation v. Henry, D.C.Mun.App., 62 A.2d 309 (1948). Unless such clear proof is shown there is no reason to prevent merchants and finance companies from establishing their relationship prior to the making of notes to be negotiated or to prevent them from providing that the notes should be payable at the finance company's office. Wilson v. Gorden, supra; Eastern Acceptance Corporation v. Henry, supra; Zier v. Eastern Acceptance Corporation, D.C. Mun.App., 61 A.2d 106 (1948); Implement Credit Corp. v. Elsinger, 268 Wis. 143, 66 N.W.2d 657, 67 N.W.2d 873 (1954).

The trial court's finding that there had been no proof of bad faith on the part of appellee so as to keep it from being a holder in due course will not be disturbed.

Affirmed.