441 P.2d 158

**Robert F. SMITH, and Claude A. Morgan, dba Morgan & Morgan Plaintiffs-Appellants,**

**v.**

**SHERWOOD & ROBERTS, SPOKANE, INC., Defendant-Respondent.**

**No. 9798.**

Supreme Court of Idaho.

May 2, 1968.

Rehearing Denied June 11, 1968.

McFadden & Park, St. Maries, for appellants.

Scott W. Reed, Coeur d'Alene, for respondent.

McQUADE, Justice.

In this action there are two plaintiffs, the conditional sale purchaser of a used crawler tractor and dozer, and the company owning a garage which repaired the tractor. Defendant is a finance company. The purchaser brought an action against the finance company, assignee of the conditional sale contract, on grounds of usury in the following transactions: the contract itself; a promissory note later made by the purchaser payable to the finance company; and a renewal and extension agreement of the note. The purchaser also asked damages for wrongful repossession of the tractor by the finance company. The garage owner sued on an alleged liability of the finance company for payments for repairs done to the tractor while it was in the purchaser's possession. The district court entered judgment in favor of the finance company on all counts. Finding no error, we affirm.

Following is a statement of facts in this somewhat complex action.

April 22, 1963, appellant Robert F. Smith, as purchaser, and Dart Truck and Tractor Co., Inc., as seller, signed a conditional sale contract for a used tractor and angle dozer. The contract was executed and was intended to be performed in the State of Washington.

The contract was on a form provided by respondent Sherwood & Roberts—Spokane, Inc., which had respondent's name in bold print at its top. The agreement stated a "TOTAL CASH PRICE" of $2,350.00, less a down payment of $350.00, plus insurance of $47.51, for a "BALANCE TO BE FINANCED" of $2,047.51. To this balance was added a "FINANCE CHARGE"

of $327.53, for a "TOTAL TIME PURCHASE PRICE" of $2,375.04, "which Purchaser agree[d] to pay "Seller" beginning May 25, 1963, in twenty-one monthly installments of $107.95 and one of $108.09, skipping March and April, 1964.

The contract contained on its reverse side an assignment form, with "Sherwood & Roberts—Spokane, Inc.," printed as assignee. On the day of the contract's execution, April 22, 1963, or soon thereafter, it was assigned by Dart to respondent. The amount paid for this assignment is not disclosed by the record.

Shortly after appellant Smith took delivery of the tractor, it broke down and needed repairs. Appellant Morgan & Morgan made the necessary repairs in its Tekoa, Washington shop, completing them at the beginning of September 1963. Although Smith's first payment of $107.95 under the conditional sale contract had been due May 25, 1963, and additional payments of that sum were due on the 25th day of each succeeding month, Smith had not made a single payment—nor does he claim these failures were excused by respondent—by the time the tractor was repaired.

Respondent had previously agreed with Smith to finance the repairs. In part to accomplish this, September 6, 1963 Smith executed a promissory note for $3,998.88, secured by a chattel mortgage on the tractor, payable to respondent in monthly installments of $166.62 commencing October 23, 1963. The mortgage was never filed of record in Washington.

As computed by respondent, the principal amount of the note included: $2,375.04 to pay respondent the debt owing from the defaulted April 22, 1963 conditional sale contract; $1,045.21 paid by respondent to appellant Morgan & Morgan for the repairs; and a property insurance premium of $45.00. Also charged was $80.46 for a credit life insurance premium and $14.75 for miscellaneous costs (credit report, filing fees, and appraisal).

The trial court, however, found the amount required to pay respondent the principal of the conditional sale contract was $2,346.31, not $2,375.04. The difference appears to be an adjustment for unexpired life insurance prepaid on the conditional sale contract.

By February 6, 1964, appellant Smith was four months in default on his promissory note of September 6, 1963. On that day, Smith executed a revision and extension agreement in which respondent extended the time for payment by four months, charging for this forbearance one per cent per month on the balance owing during the delinquent period. The amount charged was $153.44.

Again needing repairs, about the end of January 1964, the tractor was taken to the Tekoa, Washington, shop for appellant Morgan & Morgan. The repairs were performed through March 1964, and had a reasonable value based on costs, the parties agreed at trial, of $1,289.46. The district court found Morgan & Morgan, though actually knowing of respondent's mortgage on the tractor, did not notify respondent prior to making repairs. In fact, the court also found, respondent had no knowledge of these repairs before their completion, and respondent never agreed to pay Morgan & Morgan for them.

In early June 1964, an agent of respondent accompanied appellant Smith to Morgan & Morgan's shop in Tekoa, in order to discuss the bill for the 1964 repairs with Morgan's manager. By letter dated June 11, 1964, respondent advised appellant Smith that it, respondent, would not assume Smith's obligation for these repairs. The district court found the evidence conflicting but insufficient to establish respondent ever agreed to assume or pay this repair bill.

Toward the end of May 1964, without notice to respondent, appellant Morgan & Morgan permitted appellant Smith to take the tractor away from Morgan's premises to use it on a job near Tekoa. Soon thereafter, Morgan permitted Smith to take the tractor into Benewah County, Idaho, to use it a logging job. Morgan never filed of

record a notice of any lien for the 1964 repairs.

About June 9, 1964, Smith still had made no payments under the revision and extension agreement of February 6, 1964. An agent of respondent while discussing this situation with Smith, suggested Smith might request the managers of a mill to which he had been hauling logs to withhold some amount from monies due Smith and pay that amount directly to respondent. Smith then executed such an authorization for three dollars per thousand feet of timber hauled to the mill. The trial court found this authorization was not binding on Smith and could be terminated by him at his whim, and that the arrangement was only a new method for absolving the previously contracted debt.

About June 19, 1964, in Tekoa, an agent of respondent met with both appellants, told them he had a prospective buyer for the tractor in Smelterville, Idaho, and proposed that he take the tractor there and sell it, paying all proceeds over the amount due respondent from Smith to appellant Morgan & Morgan to apply on their unsatisfied repair bill. Apparently, the offered price would have left little if anything for payment to Morgan & Morgan. In any event, the manager of Morgan & Morgan's Tekoa shop refused to transport the tractor to the prospective buyer and refused to grant permission for such sale.

About one week later, respondent instituted summary foreclosure proceedings and the sheriff of Benewah County took possession of the tractor on or about June 26,

1964. At the foreclosure sale on July 2, 1964, respondent bid the tractor in for the balance due on Smith's contract, $3,724.61. Appellants concede the foreclosure sale was properly conducted.

For clarity, the several issues involved in the present action will be separately discussed.

## I. USURY

### A. Governing Law

■ The conditional sale contract, the promissory note, and the renewal and extension agreement each was made and was to be performed in the State of Washington. There has been no claim that any party acted in bad faith to evade the usury laws of Idaho. Washington law governs our determination of the issues concerning usury.[1]

### B. Conditional Sale Contract

When the contract was executed, there was no Washington statute specifically regulating finance charges for conditional sales.[2]

Under Washington law, twelve per cent is the maximum legal rate of interest,

"and no person shall directly or indirectly take or receive in money, goods or thing in action, or in any other way, any greater interest, sum or value for the loan or forbearance of any money, goods or thing in action than twelve per cent per annum." [3]

The finance charge on the "balance to be financed" of the conditional sale contract was at least 14.68% on the declining balance.[4] Thus, if the contract was subject

1. See Lyles v. Union Planters National Bank, 239 Ark. 738, 393 S.W.2d 867 (1965); cf. Winters v. Swift, 2 Idaho 61, 3 P. 15 (1884); Utah State Nat. Bank v. Stringer, 44 Idaho 599, 258 P. 522 (1927); Zimmerman v. Brown, 30 Idaho 640, 166 P. 924 (1917). See generally Annot. Conflict of Laws as to Usury, 125 A.L.R. 482 (1940); 55 Am. Jur. V, Usury, §§ 7.1, 7.2 and .7.3 (Supp. 1967).

2. Washington subsequently enacted legislation regulating conditional sale contracts, codified in Rev.Code Wash. 63.14.010 et

seq. This legislation has been repealed upon Washington's recent enactment of the Uniform Commercial Code. Idaho also had such legislation, I.C. §§ 64–801 et seq., but it too was repealed when the Uniform Commercial Code became effective in Idaho at midnight, December 31, 1967. Some comparable provisions are now contained in I.C. § 28–22–108 et seq.

3. Rev.Code Washington § 19.52.020.

4. This would be the effective or real interest charge. See Baske v. Russell, 67 Wash.2d 268, 407 P.2d 434 (1965); Shanks, Practical Problems in the Ap-

to the usury law of Washington, respondent violated that law by charging appellant Smith an usurious rate for the use of respondent's money.

In the Washington case of Hafer v. Spaeth,[5] a merchant sold a piano on an installment (conditional) sale contract. The balance of the agreed purchase price—$175.00 less $30.00 down payment—was to be paid in monthly installments of $5.00 " 'with $3.50 handling charge per month or a fraction thereof.' " The trial court found the conditional sale contract was a loan and the handling charge was interest, and determined the transaction was usurious. The Washington Supreme Court reversed saying:

> "The contract simply provided the terms upon which the vendor was willing to sell, and upon which the purchaser expressed his willingness to buy, the piano. In other words, the transaction was one which contemplated the sale of a chattel upon specified terms, and not one which exacted a consideration for the extension of payment of an existing or prospective, indebtedness." [6]

* * * * * *

"it is not the office of a conditional bill of sale to secure a loan of money, but, rather, only to permit an owner of personal property to make a bona fide sale on credit, reserving title in himself for security until the purchase price is fully paid." [7], [8]

As far as we can determine, Hafer v. Spaeth is the most recent pronouncement of the Supreme Court of Washington on the question here presented. Neither Baske v. Russell [9] nor Busk v. Hoard,[10] each containing broad ranging statements on the question of usury indicates how the Washington Supreme Court might view the facts of the present action. However, it should be noted that in Hafer v. Spaeth, unlike the present action, the original seller never assigned the sale contract for financing purposes (there was an assignment for collection prior to litigation).

In Idaho [11] and the large majority of other jurisdictions,[12] bona fide conditional sale contracts are not subject to usury laws. After careful consideration of appellants' arguments urging us to abandon

---

plication of Archaic Usury Statutes, 53 Va.L.Rev. 327, 337–338 (1967).

5. 22 Wash.2d 378, 156 P.2d 408 (1945).

6. Id. at 385–386, 156 P.2d at 411–412.

7. Id. at 386, 156 P.2d at 412.

8. Cf. Austermuhl v. Wotton, 120 Wash. 376, 207 P. 662 (1922).

9. 67 Wash.2d 268, 407 P.2d 434 (1965).

10. 65 Wash.2d 126, 396 P.2d 171 (1965).

11. Petersen v. Philco Finance Corporation, 91 Idaho 644, 428 P.2d 961 (1967); Bell v. Idaho Finance Co., 73 Idaho 560, 255 P.2d 715 (1953).

12. Some recent cases reaffirming this principle are: United Acceptance Corporation of Florida v. Joiner, 280 Ala. 605, 196 So.2d 720 (1967); Theodore Roosevelt Ag. v. General Motors Acc. Corp., 156 Colo. 237, 398 P.2d 965 (1965); Rothman v. Silver, 245 Md. 292, 226 A.2d 308 (1967); Steffenauer v. Mytelka & Rose,

Inc., 46 N.J. 299, 216 A.2d 585 (1966); Carolina Industrial Bank v. Merrimon, 260 N.C. 335, 132 S.E.2d 692 (1963); Lundstrom v. Radio Corporation of America, 17 Utah 2d 114, 405 P.2d 339, 14 A.L.R.3d 1058 (1965); Motes v. Van Wagner, 188 So.2d 704 (La.App.1966); Congress Financial Corporation v. Patti, 26 A.D.2d 924, 274 N.Y.S.2d 711 (1966); Equipment Finance Inc. v. Grannas, 207 Pa.Super. 363, 218 A.2d 81 (1966); Lamb v. Ed Maher, Inc., 368 S.W.2d 255 (Tex. Civ.App.1963). See Annot., Advance in Price for Credit Sale as Compared With Cash Sale as Usury, 14 A.L.R.3d 1065, § 4 at 1077 et seq., § 7 at 1091 et seq., and § 8 at 1112 et seq., (1967); 55 Am.Jur., Usury, § 21 (1946). See generally William D. Warren, Regulation of Finance Charges in Retail Instalment Sales, 68 Yale L.J. 839 (1959); Note, Judicial and Legislative Treatment of "Usurious" Credit Sales, 71 Harv.L.Rev. 1143 (1958); Shanks, Practical Problems in the Application of Archaic Usury Statutes, 53 Va.L.Rev. 327, 340–344 (1967); see also Notes, 24 La.L.Rev. 822 (1964); 3 Tulsa L.J. 221 (1966); 45 N.C.L.Rev. 1151 (1967).

this rule or to find the present action an exception, we have discovered no compelling reason why the general rule should not control here.

Appellant says the seller, Dart, quoted him only one price—the cash price. Appellant calls our attention to use of the word "interest" in testimony by an agent of respondent Sherwood & Roberts. Appellant contends: "As the contract clearly shows, the price of the tractor was $2,-350.00," so that after adjustments for down payment and insurance all that remained was principal of a debt in the amount of $2,047.51. Thus, appellant claims, the whole finance charge was merely interest for a loan of the principal debt sum.

The record does not disclose if the seller, Dart, made bona fide oral offers to appellant of different prices for cash and for credit before they agreed to enter the conditional sale contract. However, the contract itself states a cash price, details adjustments and charges, and presents a time purchase price. Appellant does not contend that these sums and computations had not been entered in the contract before he signed it. The contract clearly indicated a different price for cash and for credit, and appellant knowingly chose the credit price.

Appellant urges that Dart's (seller's) use of respondent's conditional sale contract form indicates that the assignment to respondent was a loan rather than a true assignment of a sale contract.[13] But the mere supplying of forms does not compel such an inference.[14]

Determination of whether a transaction such as that here involved is a bona fide credit sale and assignment, or rather is a loan, is primarily a question of fact.[15] The record adequately supports the district court's findings that the conditional sale contract and subsequent assignment was non-usurious under Washington law.

## C. Promissory Note

The trial court found free from usury the promissory note transaction of September 6, 1963. There is some confusion, however, concerning how interest was computed. The maximum allowable interest at twelve per cent add on rate (to compensate for declining balance) would be slightly less than $460.00 ($458.42 the trial court found). If only $2,346.31 was owed respondent on the conditional sale contract (this because of an adjustment for prepaid insurance), then about $467.00 was charged above principal on the new promissory note, approximately eight dollars more than the maximum permissible interest in Washington. On the other hand, if respondent correctly took $2,375.04 as owing on the initial contract, the interest charged

---

13. In a few cases, this circumstance has been a ground for finding a loan transaction. See Daniel v. First National Bank of Birmingham, 227 F.2d 353 (5th Cir. 1955), reh. den. 228 F.2d 803 (1956), and cases cited Annot., 14 A.L.R.3d 1065, § 14 at 1136 (1967).

14. See Petersen v. Philco Finance Corporation, supra n. 11.
"The opinion noted the complaint did not disclose the finance company had anything to do with the transaction until after the buyer and seller had agreed upon the terms of the sale; the action of the finance company as disclosed by the complaint was limited to preparing the contract setting forth the agreement the parties had reached and later purchasing the contract, and there was no contention that it added anything or failed to detail that agreement." (Id. 91 Idaho at 649, 428 P.2d at 966); see generally William D. Warren, Regulation of Finance Charges in Retail Instalment Sales, 68 Yale L.J. 839, 847 (1959).

15. See Russell v. Universal Acceptance Corporation, 210 A.2d 834 (D.C.App. 1965); Employee Finance Company v. Lathram, 363 S.W.2d 899 (Tex.Civ.App. 1962); Annot., 14 A.L.R.3d 1065, § 12 at 1126–1128 (1967); cf. Colagrossi v. Hendrickson, 50 Wash.2d 266, 310 P.2d 1072 (1957); Meridian Bowling Lanes, Inc. v. Brown, 90 Idaho 403, 412 P.2d 586 (1966); Haley v. Greenhaw, 235 Ark. 481, 360 S.W.2d 753 (1962).

on the new note was clearly within the legal limits.

Part of the confusion results from the trial court's finding both $3,988.88 and $3,998.88 as the total amount of the new promissory note which in fact was $3,998.88. Also confusing is that the itemized figures in the court's findings do not total either $3,988.88 or $3,998.88. And further confusing, both respondent and the trial court stated actual interest on the new note as $438.42, which is demonstrably incorrect: respondent's exhibit R shows this figure was determined by multiplying $3,465.25 times thirteen per cent (two years at six and one-half per cent per year absolute interest equals twelve per cent per year on a proportionately declining balance for the two year note), but in fact that calculation would have a product of $450.48.

Nevertheless, at most the interest charged exceeded allowable interest by about eight dollars on an approximate total interest of $460.00. The record contains no suggestion that such overcharge was made by respondent in bad faith in an effort to evade the usury laws.[16] The plausible interpretation is that respondent made an honest oversight. Again, the existence vel non of usury is primarily a question of fact.[17] We cannot say the trial court was in error when it found that interest on the $3,998.88 promissory note was not usurious.

Smith also contends that to pay off the conditional sale contract respondent should have taken only the principal amount plus accrued interest, not, as respondent did take, the whole face obligation of the contract. Smith's position is unfounded. He was in default for four months before the new promissory note transaction, and, in absence of statute to the contrary [18] respondent had the right under the contract's acceleration clause to demand payment of the entire obligation.[19]

### D. Renewal and Extension Agreement

The district court concluded the interest charged by respondent for renewing and extending appellant Smith's obligation under his promissory note was not usurious. Appellant Smith has presented no evidence that respondent intended to charge an impermissible amount of interest for its forbearance. The district court's findings on this issue will not be disturbed.[20]

### II. MODIFICATION OF SMITH'S DEBT OBLIGATION

Appellant Smith contends his authorization at the suggestion of respond-

---

16. Cf. Hafer v. Spaeth, supra n. 5.

17. See authority cited n. 15.

18. Washington subsequently enacted such a statute, codified in Rev.Code Washington 63.14.040; it has been repealed upon Washington's enactment of the Uniform Commercial Code.

19. See Imperial Thrift & Loan v. Ferguson, 155 Cal.App.2d Supp. 866, 318 P.2d 566 (1957); cf. Hafer v. Spaeth, supra n. 5; Eagle Rock Corp. v. Idamont Hotel Co., 59 Idaho 413, 85 P.2d 242 (1938). Because the conditional sales contract was not a loan instrument, we are not here concerned with a loan provision accelerating or declaring immediately due upon default in payment of interest or principal the entire amount of a loan including interest for the whole loan term. Generally, we note in passing, such a clause does not taint the loan with usury but the amount representing unearned interest is treated as liquidated damages or penalty and as such is scrutinized by the court to determine its reasonableness. Cissna Loan Co. v. Gawley, 87 Wash. 438, 151 P. 792, L.R.A. 1916B, 807, Ann.Cas.1917D, 722 (1915); Tipton v. Ellsworth, 18 Idaho 207, 109 P. 134 (1910); Eagle Rock Corp. v. Idamont Hotel Co., supra; Annot., Usury as Affected by Acceleration Clause, 84 A.L.R. 1283 (1933) supplemented in Annot., 100 A.L.R. 1431 (1936).

20. Cf. authority cited n. 15.

ent's agent for deduction by an employer of three dollars per thousand feet of delivered lumber modified his loan contract with respondent. Smith claims that so long as he left in effect this authorization, he would be fulfilling his obligations to respondent under the new agreement. At the least, Smith argues, after his authorization respondent was estopped from foreclosing. without previous notice to him.

Smith's arguments for modification raise factual issues concerning the intent of the parties to the loan agreement.[21] The district court found in favor of respondents that there had been no modification and that the authorization did not act as an estoppel. These findings are supported adequately by the evidence.

## III. RESPONDENT'S LIABILITY FOR THE 1964 REPAIRS

Appellant Morgan & Morgan contends respondent must pay for the repairs made to the tractor in 1964. Morgan & Morgan's argument is threefold: first, that under the governing Washington law, respondent's mortgage was completely void as to Morgan & Morgan regardless of Morgan & Morgan's actual knowledge; second, that respondent knowingly received the benefit of the repairs when it purchased the tractor at the foreclosure sale, so that principles of unjust enrichment require respondent to pay Morgan & Morgan for the repairs;

third, that the evidence clearly establishes an equitable estoppel precluding respondent from denying its liability for the repairs.

### A. *Superiority of Respondent's Mortgage*

Respondent's mortgage, though unrecorded, was valid as to Morgan & Morgan because Morgan & Morgan had actual knowledge of the mortgage. Under governing Washington law, an unrecorded chattel mortgage "is void * * * against all subsequent * * * encumbrancers for value and in good faith * * *."[22] The "in good faith" requirement excludes from the recording statute's protection a subsequent encumbrancer with actual knowledge of a prior though unrecorded mortgage.[23] And this rule applies though the subsequent encumbrancer with knowledge be an artisan who has supplied labor and materials to the chattel.[24]

### B. *Unjust Enrichment*

We find no merit in Morgan & Morgan's contention that respondent must make restitution because it was unjustly enriched in the amount of the value of the repairs by purchasing the tractor at the foreclosure sale. Generally, that a mortgagee receives on foreclosure the benefit of repairs previously done to the mortgaged property does not in itself render the mortgagee liable for the value of the repairs.[25]

21. Cf. Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 P.2d 651, 94 A.L.R. 1264 (1934); Ore-Ida Potato Products, Inc. v. Larsen, 83 Idaho 290, 362 P.2d 384 (1961).

22. Rev.Code Washington § 61.04.020.

23. See Roy & Co. v. Scott Hartley & Co., 11 Wash. 399, 39 P. 679 (1895); Hinchman v. Point Defiance Ry. Co., 14 Wash. 349, 44 P. 867 (1896); 45 Am.Jur., Records and Recording Laws, § 172, p. 526 (1943); id. § 148, p. 509; see also Farmers' State Bank of Lind v. McCulley, 133 Wash. 364, 233 P. 661 (1925).

24. See W. F. Jahn & Co. v. Mortgage Trust & Savings Bank, 97 Wash. 504,

166 P. 1137 (1917); cf. In re Cascade Fixture Co., 8 Wash.2d 263, 111 P.2d 991 (1941); Fitch v. Applegate, 24 Wash. 25, 64 P. 147 (1901); see also Olsen v. Smith, 84 Wash. 228, 146 P. 572 (1915); Cutler v. Keller, 88 Wash. 334, 339, 153 P. 15, 17, L.R.A.1917C, 1116 (1915).

25. See Chatfield v. Fish, 126 Conn. 712, 10 A.2d 754 (1940); Callahan v. Railroad Federal Savings and Loan Ass'n, 36 N.Y.S.2d 550 (S.Ct.1942); cf. Dorsey v. Strand, 21 Wash.2d 217, 150 P.2d 702 (1944); see generally 98 C.J.S. Work & Labor § 11, p. 733 (1957); id. § 42, p. 779. But cf. Paschall's, Inc. v. Dozier, 407 S.W.2d 150 (Tenn.1966).

But even if the facts of the present action came within general principles of restitution, nevertheless Morgan & Morgan could not recover from respondent because no unjust enrichment due to the repairs appears from this record. The repairs were completed in March 1964; the tractor was not repossessed until about June 26, 1964. Respondent purchased it on July 2, 1964, for the balance due on appellant Smith's contract. Although the district court found the parties agreed the "reasonable value of such repairs amounted to $1,289.46," the only evidence on this point concerned actual costs and there was no evidence that the tractor was worth more to respondent than the balance due from Smith because of the repairs. The record does not indicate if the tractor has been resold or if so for what price.

We find the district court did not err in its conclusion to deny Morgan & Morgan recovery for unjust enrichment.

#### C. *Equitable Estoppel*

Morgan & Morgan contends the district court committed error by concluding respondent was not liable to it for the repairs on grounds of equitable estoppel. We find this is not a proper case for equitable estoppel and so the court was not in error. Assuming Morgan & Morgan refrained from filing a lien or attempting to take possession of the tractor in mistaken belief that respondent would pay for the repairs, nevertheless such conduct would not have been detrimental to Morgan & Morgan's interests.[26] For, as determined earlier in this opinion, respondent by its mortgage had superior right to the tractor.

For these reasons we decide the district court properly denied Morgan & Morgan's claims against respondent for the cost of repairs to the tractor.

Judgment affirmed. Costs to respondent.

26. Cf., Nelson v. Bailey, 54 Wash.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400 (1959).

TAYLOR, C. J., SMITH, J., and NORRIS and COGSWELL, D.JJ., concur.

On Denial of Petition for Rehearing.

McQUADE, Justice.

In a petition for rehearing, appellants raise three points for our reconsideration. Two points, concerning appellant Smith, concern our decision on some of the usury issues. The petition presents no matter additional to that which we have already considered in making our decision on these two points. It appears unnecessary to add to our opinion on these two points and in that respect this petition is summarily denied. However, the third point, concerning appellant Morgan & Morgan, requires further discussion.

Appellant Morgan & Morgan insists that it was both an encumbrancer of the truck and a creditor of the mortgagor, appellant Smith. Morgan & Morgan contends that though we correctly decided that respondent's interest as mortgagee of an unrecorded mortgage was superior to Morgan & Morgan's interest as subsequent encumbrancer with knowledge of respondent's pre-existing mortgage, nevertheless we erred in not holding the mortgage void with respect to Morgan & Morgan's status as creditor of Smith.

We assume without deciding that Morgan & Morgan became (subsequent to execution of the mortgage) a creditor of Smith's within the meaning of the quoted statute, Rev.Code Wash. 61.04.020(1). And we note that the Washington cases hold that notwithstanding full knowledge of a pre-existing chattel mortgage by one who becomes a creditor of the mortgagor such mortgage is void as against such subsequent creditor.[1] However, under Washington law a creditor of the mortgagor of a chattel cannot question the validity of such mortgage after the sheriff's seizure

1. Hinchman v. Point Defiance Ry. Co., 14 Wash. 349, 44 P. 867 (1896); Blumauer v. Clock, 24 Wash. 596, 64 P. 844 (1901).

of such chattel and its sale in foreclosure proceedings.[2,3] Morgan & Morgan did not commence legal action with respect to their claim for the repair bill until after the foreclosure. Therefore, we reaffirm our decision on this point.

---

2. Asbury v. Miller, 132 Wash. 235, 232 P. 360 (1925); cf. Haskins v. Fidelity Nat. Bk., 93 Wash. 63, 159 P. 1198 (1916); Watson v. First Nat. Bk., 82 Wash. 65, 143 P. 451 (1914); see also Martin v. Holloway, 16 Idaho 513, 102 P. 3, 25 L.R.A.,N.S., 110 (1909); Kettenbach v. Walker, 32 Idaho 544, 186 P. 912 (1919).

3. We note in passing the beneficial potential effect of this rule in protecting the interests acquired by some bona fide purchaser at an Idaho foreclosure sale of a chattel which an encumbrancer has released possession of and permitted to be brought into this state, thereby enabling it to be executed upon and sold in Idaho foreclosure proceedings.