# HENRY J. WILLIAMS *vs.* WILLIAM REYNOLDS and JEHU B. SMITH.

A promissory note payable to blank order was given by the maker to a firm to which he was indebted, to an amount exceeding the face of the note, and continued so indebted until its maturity. The firm gave him *credit,* on their books, for the *full amount* of the note, and charged him with *legal interest* thereon, and, before maturity, placed the note *without endorsing* it in the hands of a broker for sale, who sold it at *twelve per cent.* and paid the proceeds to the firm, and after maturity the *purchasers* sued the *maker.* HELD:

That this being a *valid, available* note in the hands of the firm, before they parted with it, and on which, if they had held it till maturity, they could have recovered, the parting with it, at less than its value, was a *sale,* and not an usurious transaction such as to prevent the recovery of the holders.

To constitute usury there must be a *loan* of money, an agreement that the money lent shall be returned at all events, and that more than legal interest shall be paid.

A *bona fide* sale of a bill of exchange or promissory note is not usurious, although it may be sold below its value.

The *test* whether the transfer of a note by the payee to the holder, at more than the legal rate of interest, is a *sale* or an *usurious loan,* is, whether it was a *perfect* and *available* note in the hands of the payee, at the time of the transfer, upon which, when due, he could have maintained an action against the maker.

Whether the transfer of a note is a *bona fide* sale, or a mere device to evade the statute of usury, is a question for the jury where there are suspicious circumstances independent of the transfer, but there must always be *some evidence* to justify the court in submitting such inquiry to them; for *prima facie* the transaction is *bona fide.*

8      v.10

APPEAL from the Circuit Court for Anne Arundel county.

*Assumpsit*, brought by the appellees as holders, against the appellant as maker, of a promissory note for $1873.69, payable to blank order at four months, and dated the 27th of July 1853. Plea, *non assumpsit*.

*Exception.* The signature of the maker of the note was admitted, and also that the blank for the name of the payee was filled up with the plaintiffs' names at the time suit was brought. The evidence in regard to the sale or transfer of the note to the plaintiffs is stated in the opinion of this court. On cross-examination of the witness James Warden, in addition to the evidence as stated in the court's opinion, he said that he went out to Elk Ridge Landing to get the note and did not take Williams' account with him, and in answer to the question, "What representations did you make to him to induce him to make this note?" he answered: "I told him that we wanted his note to raise money on; does not recollect whether he mentioned his indebtedness or not." On re-examination the same witness proved, that since the note was protested Williams told witness that he knew he owed the note, but wished to test the question, whether it was legal to follow the business of purchasing notes above the interest allowed by law. A letter was also offered in evidence from Williams to the plaintiffs, proposing to pay the note by transferring to them a lot of ground in the city of Baltimore. The plaintiffs then asked instructions to the jury, in substance as follows:

1st. If the jury find that the note was made by the defendant, payable to blank order, and given by him to the Messrs. Warden, and at the time it was so made and given the defendant was indebted to the Wardens in a larger amount than the note; that there was no usurious consideration for the giving of it between the defendant and the Wardens; that the Wardens afterwards placed the note in the hands of a broker to be sold or disposed of, and that the plaintiffs received the note from said broker and paid therefor a valuable consideration, then the plaintiffs are entitled to recover on the note, though they paid for it less than its amount after discounting legal interest therefrom.

2nd. If the jury find the making and giving the note, the indebtedness of the defendant to the Wardens, their placing the note in the hands of a broker for sale, and the purchase thereof by the plaintiffs, as stated in the preceding prayer, and that at the time of such purchase the plaintiffs were not informed of the facts connected with the origin of the note; that the Wardens did not, nor either of their firm ever endorsed the note, or in any way became responsible for or secured the payment of it, or any part of it; that at the time it was given the defendant was credited on the books of the Wardens for the full amount of the note, and debited at its maturity with legal interest for the same, and no more; that shortly after its maturity the Wardens presented the defendant with his account with their firm, which included this note as a credit in his favor for its full amount, and a debit of merely legal interest thereon, and that defendant afterwards drew on said firm for all the balance appearing due him on said account, except about $3 to $5, which still stands to his credit on their books, then the plaintiffs are entitled to recover on the note, though they paid for it less than its amount after discounting legal interest therefrom.

3rd. If the jury find the facts contained in the second prayer, nd further find that the note was given by defendant in order to enable the Wardens to raise money for the purpose of purchasing wheat for the defendant, and that the Wardens did, between the date and maturity of the note, purchase wheat for the defendant to an amount exceeding that of the note, and that these purchases were made almost daily within that period, and that drafts to a still larger amount were within that time paid by the Wardens for wheat purchased by the defendant, then the plaintiffs are entitled to recover on the note, though they paid less for it than its amount after discounting legal interest therefrom.

The defendant then asked the following instructions:

1st. That the plaintiffs are not entitled to recover, if the jury believe from the evidence that the note was discounted by the plaintiffs for the Wardens at a greater rate of interest than six per cent., upon a calculation by Coakley and the plaintiffs at that rate.

2nd. If the jury believe the note was given by the defendant to the Wardens for the purpose of enabling them to raise money thereon, and without any account, and was accordingly dis-counted by the plaintiffs for the Wardens at a greater rate of interest than six per cent. upon a calculation by Coakley and the plaintiffs at that rate, then the plaintiffs are not entitled to recover.

The court, (Brice T. B. Worthington, Special Judge,) granted the prayers of the plaintiffs, and refused those of the defendant. To this ruling the defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before Le Grand, C. J., Eccle-ston and Mason, J.

*Cornelius McLean* for the appellant, argued:

1st. That the transaction as to the appellees was usurious. Some doubt has been entertained whether usury as between endorser and endorsee vitiates the note as against the maker, and decisions in different States take both sides of the question. As a general rule, however, it may be remarked that a party suing on a note must show title to it, and no title can be derived through a usurious transaction which is against the statutory law of the land, unless he takes without notice. 1 *East,* 93, *Parr vs. Eliason.* 1 *Starkie,* 385, *Lowes vs. Maz-zaredo.* 4 *Pet.,* 205, *Lloyd vs. Scott.* 2 *Conn.,* 175, *Lloyd vs. Keach. Comyn on Usury,* in 5 *Law Lib.,* 66, 175. The transaction in this case was usurious according to the above authorities, even if the note had been a regular business note. But the evidence shows that it was not; that it was a mere contrivance to raise money on, and, therefore, it first became effective as between the parties when it was discounted. 1 *H. & G.,* 477, *Sauerwein vs. Brunner.* It makes no differ-ence that the appellant owed their agents money, unless the note was intended as a payment or security for it. If it was designed, as the testimony shows, to raise money on, then as between principal and agent it was not a note on which suit could be brought. Now all this ought to have been left to

the jury, and if they found that in point of fact there was such an arrangement between the appellant and his agents for the borrowing of the money, and that it was borrowed accordingly by a discount of the note in question, they might have given a verdict for the appellant.   We claim, therefore, the benefit of the case of *Sauerwein vs. Brunner*, and say that by the instructions granted we were shut out from it.

2nd.  If there was usury in this case, we claim that under the 49th sec. of the 3rd art. of the constitution the plaintiffs cannot recover.   We contend, that under this section any contract of any description, no matter how innocent any of the parties may be, or how little any of them may be injured thereby, is void absolutely if tainted with usury.   *Ex turpi contractu non oritur actio*, and the best test whether a contract is capable of being enforced when connected with an illegal transaction is, can the plaintiff establish his case without showing the illegal transaction?   Here the holders of the note get title to it by means of the usury.   *Chitty on Cont.*, 657.   The effect of this constitutional provision has been fully considered in the able opinion of *Chief Justice Taney*, in the case of *Dill vs. Ellicott*, recently decided in the Circuit Court of the United States, and the views here presented fully sustained.

3rd.  The first and second prayers of the appellees take from the jury the circumstances which they might consider as proving that the note had no existence until discounted, and was made by an arrangement between the appellant and his agents to borrow money on, which there is certainly testimony tending to prove.  The third prayer assumes the state of things contended for above, and still instructs the jury, that although the note was a contrivance to raise money for the appellant, yet that the plaintiffs ought to recover if they did not know of the circumstances.   For taking away from the consideration of the jury these facts and circumstances the prayers were clearly erroneous.  1 *Gill*, 84, *Wolfe vs. Hauver.*  6 *Gill*, 352, *Western Bank vs. Kyle.*  7 *Gill*, 46, *Carter vs. Cross.*

*Oliver Miller* and *Thomas Donaldson* for the appellees, argued:

1st.  That there was no usury in any part of the transactions

proved, even under the most stringent construction ever given to the provisions of the new constitution of Maryland; or even supposing that the severest statutes that ever existed in England were here in force. The elementary principle is, that to render a contract usurious there must be a loan, either express or implied, and an understanding that the money lent shall be returned at all events. *Comyn on Usury*, 156. 3 *Eng. C. L. Rep.*, 92, 97, *note.* 4 *East*, 55, *Barclay vs, Walmsley.* 4 *Pet.*, 205, *Lloyd vs. Scott.* 7 *Pet.*, 103, *Nichols vs. Fearson.* 2 *Conn.*, 178, *Lloyd vs. Keach.* Here there was certainly no *loan* to the *Wardens* by Williams, the maker of the note, who was then indebted to them to a much larger amount. Neither was there a loan from the appellees to the Wardens, for the latter did not endorse the note or in any way guarantee its payment. The Wardens received the proceeds of the *sale* of the note, but they are not obliged to repay the appellees a single cent of the money. In all the cases where the transfer of a note has been considered usurious there was either endorsement or some sort of guaranty. The cases already cited show this, and also 7 *Wend.*, 570, *Cram vs. Hendricks.* 3 *Pick.*, 185, *Knights vs. Putnam.* 4 *H. & J.*, 507, *Burt vs. Gwinn.* A promissory note may be *sold* like any other commodity, at any price. 7 *Wend.*, 256, *Kent vs. Walton.* 3 *McLean*, 587, *McLean vs. Lafayette Bank.* The note in this case was not an accommodation note given without consideration, as in *Sauerwein vs. Brunner*, but an *available* note for consideration, perfect as a security in the hands of the Wardens *before* they delivered it to the broker to be sold. Williams was paid full value for it by the credit given on the Wardens' books, and even had it been proven to have been given in consideration of future advances it would have been available. *Byles on Bills*, 93, 98, 100, 103. *Story on Bills*, secs. 183, 190. 3 *Wend.*, 62, *Rice vs. Mather.* The true *test*, whether the transfer of a note by the payee to the holder at a higher premium than the legal rate of interest, is to be regarded as a *sale* or as *tainted with usury*, is, was it an *available* note in the hands of the payee at the time of the transfer, and could he, if it had *then been due*, have maintained an action upon it

*against the maker?* 7 *Wend.*, 570, *Cram vs. Hendricks.* 8 *Cowen*, 669, *Powell vs. Waters.* 15 *Johns.*, 44, *Munn vs. The Commission Co.* 1 *H. & G.*, 477, *Sauerwein vs. Brunner.* Looking to the evidence in the case there cannot be a doubt that the note was available in the hands of the Wardens, and if they had retained it until its maturity they could have sued Williams upon it. If this be so there is an end of the question of usury. But we may further add, that if a contract is susceptible of two interpretations, one making it usurious and the other *not*, the latter is to be taken. 3 *Cowen*, 284, *Archibald vs. Thomas.* 7 *Pet.*, 111, *Nichols vs. Fearson.*

2nd. That even if there is usury in the case, the appellees are protected by the acts of 1824, ch. 200, and 1845, ch. 352, which we insist are not repealed by the 49th sec. of the 3rd art. of the constitution. This constitutional provision does not in express terms *avoid the contract*, and, as we insist, leaves in full force the acts referred to. 8 *Wheat.*, 355, *Fleckner vs. U. S. Bank.* 3 *McLean*, 587, *McLean vs. Lafayette Bank.* 9 *Pet.*, 399, *Bank of U. S. vs. Waggener.* *Cowp.*, 112, *Floyer vs. Edwards.* If these acts are in force, the only way in which the appellant could avail himself to any extent of the defence of usury was by special plea, such as is required by the act of 1845, and not under the general issue.

LE GRAND, C. J., delivered the opinion of this court.

This suit was instituted by the appellees against the appellant on his promissory note. There is no question as to the genuineness of the note, nor of the ownership of it by the appellees. The defence set up is usury. The plea in the case is *non-assumpsit*.

The note was drawn in blank. By the testimony of J. Warden it appears, he is of the firm of J. & H. Warden, and that on the 27th day of July 1853, the appellant gave him the note in question. At the time the note was given Williams was indebted to the said firm to the amount of $2,828.08, and credit was given to Williams on the books of the firm, at the time of receiving the note, *for its full amount*. After the

note was given $2276.98 worth of wheat was purchased for Williams, and delivered to him by the firm; and they also paid drafts for wheat purchased for Williams in the county, to an amount not less than $8,113.99. The firm were making purchases of wheat for Williams nearly every day from the date of the note to its maturity. After the maturity of the note the account of the firm with Williams was present-ed to him, and in it was a credit for the *full* amount of the note with a charge of legal interest thereon. The account showed a balance due Williams of about $150, for which with the exception of a few dollars he subsequently drew on the said firm and was paid. The note was placed in the hands of a Mr. Coakley to be disposed of, the precise words of instruction given to him, the witness Warden does not re-collect. Coakley reported to the firm that he could dispose of it at twelve per cent, in which proposition the firm concurred. Neither the firm nor any of its members endorsed the note, nor did they, or either of them, enter into any obligation to pay the note, or any part thereof, in any event whatsoever. On cross-examination the witness said, the note was given in order to pay part of the said Williams' indebtedness to the said firm, *but nothing was said about discounting it;* the object in taking the said note, was to lessen the indebtedness of said Williams to the firm, and to raise money to purchase wheat for Williams.

The broker, Coakley, testified the note was handed to him by the Messrs. Warden before its maturity, and before such maturity, was by him offered to the appellees, and by them taken at twelve per cent. The proceeds were handed over to the Messrs. Warden. The appellees did not know from whence the note came. At the time of its delivery to the witness, the Messrs. Warden told him it was a legitimate one, and that Mr. Williams owed them the amount for money advanced.

We are of opinion, on the case as proven, that there was no such taint of usury in the transaction as to prevent the re-covery of the holders of the note, and therefore, the 49th section of the 3rd article of the constitution is not in any way involved in this controversy.

The proof is all one way as to the indebtedness of Williams at the time of the giving, the sale and maturity of the note. It shows he was indebted beyond its amount, and that he received from the firm a credit for its full amount. The question then is, did the purchase of the note before its maturity, by the appellee, at the deduction of twelve per cent., so impair their title as to preclude them from recovering its amount from the maker? We think not.

To render a contract usurious there must be a loan, either express or implied, and an understanding that the money loaned is to be returned. This is elementary law. In the 1st Vol. page 299, of *Bouvier's Institutes*, usury is defined as "the illegal profit which is required by the lender of a sum of money, from the borrower, for its use. To constitute a usurious contract, the following circumstances are requisite; 1, a loan of money; 2, an agreement that the money lent shall be returned at all events; 3, that more than legal interest shall be paid. There must be a loan of money in contemplation of the parties, and if there be a loan, however disguised, it is sufficient; but a *bona fide* sale of a bill of exchange or promissory note is not usurious, although it may be sold below its value."

In the case before us at the time of the delivery of the note to the Messrs. Warden, the consideration was full and complete, and continued to be so up to the time of its maturity. There can be no doubt if they had retained it until it became due they could have recovered its amount. This being so, then there was no usury in its inception. In the case of *Cram vs. Hendricks*, 7 *Wendell*, 569, the whole subject is most fully and elaborately considered, and the rule there laid down by the Supreme court of New York and affirmed by a majority of the Court of Errors is, that the transfer by the *payee* of a valid, available note, upon which when due, he might have maintained an action against the *maker*, and which he parts with at a *discount* beyond the legal rate of interest, is not a usurious transaction, although the payee on such a transfer *endorses* the note; and on non-payment by the maker, the *endorsee* may maintain an action against the endorser. In that case, the one of *Munn vs. The Commission Company*,

9      v.10

15 *Johns.*, 44, was reviewed and fully endorsed. It is also quoted with apparent approval by the Court of Appeals in the case of *Sauerwein vs. Brunner*, 1 *Harris & Gill*, 477. In commenting on it in *Cram vs. Hendricks*, Judge Sutherland on behalf of the court says: "That was an action of assumpsit, brought by the plaintiff, as endorsee, against the defendants as acceptors of a bill of exchange; it was endorsed to the plaintiff by Oliver Ruggles, the payee of the bill, at a discount greater than the legal rate of interest, and it was contended that this was an usurious transaction, and avoided the bill. *The only doubt which the court entertained upon this point, was, whether the bill was available in the hands of Oliver Ruggles, the payee, and whether he could have maintained a suit upon it?* Judge Spencer, in delivering the opinion of the court, says, Upon a more careful examination of the case, we see no reason to doubt, that the bill, whilst in the hands of Oliver Ruggles, and before it was discounted by the plaintiff at a higher rate than the legal interest, was a perfect and available bill, and that when it became due he could have maintained an action upon it, either against the defendant, or Herman Rogers, the drawer. *This,* he continues, *appears to the court to be the true test in distinguishing between a case where the discount of a bill at a higher premium than the legal rate of interest will render the transaction legal, by considering it the purchase of a bill already perfect and available to the party holding it, and where it will be illegal as an usurious loan of money.*" If this test be applied to the case before us there cannot be a doubt, that the note when passed to the Messrs. Warden was a valid, available note, free from all taint of usury. The facts of it are stronger than those in the cases which we have quoted, for here the parties, to whom the note was originally given, did *not* endorse it, nor in any manner become responsible for its payment. They sold it, by their agent, without being known to the present holders as in anywise connected with the transaction. The case of *Sauerwein vs. Brunner*, in no manner conflicts with these principiciples; so far from it, the court there quote them and seemingly, at least, adopt them. That was a case where the note

was given as an *accommodation* and for the purpose of borrowing money at an usurious rate. The note being tainted, from the very moment it became available as a note, with usury, and having been made before the passage of the act of 1824, chapter 200, the taint followed it into the hands of a *bona fide* holder and debarred him from recovery.

Although the transfer of a note is inquirable into, that is, whether it be a *bona fide* sale, or merely a device to evade the statute of usury, and the question submitted to a jury where there are circumstances independent of the transfer to excite suspicion of an intent to evade the statute, yet, there always must be some evidence to justify the court in submitting such inquiry, for, *prima facie*, the transaction is *bona fide*. In the case before us, there is not a particle of testimony to go to the jury to show the existence of usury in the inception of the note, nor of an intent, on the part of the Messrs. Warden, to evade the statute. We have said nothing of the pleadings in the cause, no question having been presented in regard to them in the court below. Entertaining these views, we, of course, approve of the ruling of the Circuit court in regard to each and all of the prayers, and accordingly affirm the judgment.

*Judgment affirmed.*