## ROTHMAN *v.* SILVER

[No. 73, September Term, 1966.]

*Decided February 6, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Paul Weinstein* for appellant.

*Charles C. W. Atwater,* with whom were *Walter C. My-lander, Jr.,* and *Reuben L. Uman* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

This case involves the construction and effect of a written contract whereby Rothman sold a taxicab and a Public Service Commission franchise to Silver for $2,000 in cash and a balance of $9,072 to be paid over a four-year period with interest at six per cent. Silver, the buyer, says that the writings constituting the integration must be read to mean that interest is to be paid on declining balances only, else the ugly head of usury would be raised. Rothman, the seller, contends, first, that the agreement was that Silver would pay the deferred balance of the purchase price, $9,072, plus interest at six per cent a year on $9,072 for each of four years (that is, twenty-four per cent of $9,072, which equals $2,177.28) or a total of $11,249.28, and, second, that the usury statutes apply only to loans of or forbearances to collect money and the present transaction was a sale and purchase of personalty as to which the parties had a complete unrestricted right of freedom of contract.

Silver filed a bill of complaint which alleged that on February 7, 1962, he had "purchased a taxicab and Public Service Commission franchise" from Rothman for $11,072, paying $2,000 in cash and giving a chattel mortgage on the taxicab and franchise and a confessed judgment note, in both of which he agreed to pay $9,072 plus "interest at 6% per year" to be paid "in installments of Fifty-four Dollars and Eight Cents ($54.08) per week" commencing "February 21, 1962, and continuing thereafter for 208 consecutive weeks until the whole principal sum and interest are fully paid." A further allegation was that the principal sum of $9,072 "with interest at six per cent (6%), will be fully repaid when 186 installments of Fifty-four Dollars and Eight Cents ($54.08) plus an additional final payment of Forty Dollars and Eighteen Cents ($40.18) have been made, and any further payments thereafter are not required * * * and would, if so required, be usurious."

Final allegations were that 183 installments of $54.08 each had been paid, and three more of that amount plus a final one of $40.18 would be paid in full settlement but that Rothman

intended to collect 208 payments of $54.08 each and would confess judgment unless he did.

Silver prayed that Rothman be enjoined from collecting more than $9,072 "with interest at the rate of six per cent (6%) per annum properly computed on declining balances" and a declaration that the indebtedness evidenced by the chattel mortgage and note would be fully satisfied by three additional payments of $54.08 each plus a final payment of $40.18.

Rothman demurred to the bill and Judge Prendergast, holding that the provisions for deferred payments of the $9,072 of the purchase price were the legal equivalent of a loan of money and thus subject to the usury laws, overruled the demurrer. Rothman answered, admitting that 183 payments of $54.08 each had been made and alleging that the facts clearly revealed a sale and purchase of personalty not subject to the usury statutes which cover only a loan of or forbearance to collect money and that Silver, having paid but 183 installments, owed 25 more payments.

Silver moved for a summary judgment, and the parties then filed four joint exhibits. The first was an "Agreement of Sale," dated January 24, 1962, wherein Silver "agrees to purchase" from Rothman and Rothman agrees to sell Silver the taxicab and the franchise for $2,000 in cash and a balance of $9,072 "to be secured by a Purchase Money Chattel Mortgage and a Confessed Judgment Note, both of which shall provide for the payment of said balance, plus interest at six per cent (6%) per year, in regular weekly installments over a period of four (4) years, beginning two (2) weeks after approval of the transfer of the taxicab franchise by the Public Service Commission." The second was a bill of sale of the taxicab and franchise, the third the chattel mortgage, and the fourth the confessed judgment note. The last three were all dated and executed February 7, 1962.

Judge Harris, without opinion, granted Silver's motion for a summary judgment, decreeing the relief prayed in his bill of complaint.

There is no contention that the transaction between Rothman and Silver was other than a bona fide sale and purchase of a taxicab and franchise. The agreement of the parties was in-

tegrated in and evidenced by the four documents they executed, and since the execution of three writings dated February 7 was contemplated (explicitly as to the chattel mortgage and confessed judgment note and implicitly as to the bill of sale) by the agreement of sale of January 24 (the difference in time of execution was occasioned by the necessity of obtaining approval by the Public Service Commission of the transfer of the franchise), the four writings are to be read and construed together, as if they were one instrument. *Ray v. Eurice,* 201 Md. 115, 128, and authorities therein cited; *Rossi v. Douglas,* 203 Md. 190, 198; *Brown v. Fraley,* 222 Md. 480, 489; *Wheaton Lanes v. Rinaldi,* 236 Md. 525, 531. See also *Ahern v. White,* 39 Md. 409, 416-17; 17A C. J. S. *Contracts* § 298; 17 C. J. S. *Contracts* § 58.

The intent and meaning of the writings are to be determined by giving effect to all of their provisions, if it is possible to do so. *Sagner v. Glenangus Farms,* 234 Md. 156, 167. If a written contract is susceptible of a clear, unambiguous and definite understanding, as we think the writings before us, read together and considered as a whole, are, its construction is for the court to determine. *Keyworth v. Industrial Sales,* 241 Md. 453, 456.

We read the agreement of sale to mean that when the Public Service Commission approved the transfer of the franchise Silver's $2,000 would be delivered out of escrow to Rothman and, simultaneously, there would be executed (a) the bill of sale transferring title to the taxicab and the franchise from Rothman to Silver, (b) the chattel mortgage on the cab and franchise, and (c) the confessed judgment note, the latter two both embodying Silver's promise to pay $9,072 of deferred purchase price and $2,177.28 of interest thereon (calculated at the rate of 6% of $9,072 a year for each of four years) payable in 208 consecutive weekly installments of $54.08 each beginning February 21, 1962. Any possible doubt as to the intended meaning of the phrase "interest at six per cent (6%) per year" found in the agreement of sale, the chattel mortgage and the note is dispelled by the explanatory words which accompany the phrase in the mortgage and note. The mortgage provides that Silver is to pay $9,072 plus interest at 6% per year "upon the following terms and conditions * * *. The Mort-

gagor covenants to repay to the Mortgagee, without demand, the sum of Fifty-four Dollars and Eight Cents ($54.08) per week, commencing February 21st, 1962, and continuing thereafter for two hundred eight (208) consecutive weeks, until the whole principal sum and interest are fully paid." The note provides for the payment of $9,072, "with interest at the rate of six per cent (6%) per year, said principal sum and interest to be payable in the following manner:

> "The sum of Fifty-four Dollars and Eight Cents ($54.08) per week, payable each and every week hereafter starting on February 21, 1962, and continuing thereafter until the entire principal sum and interest are paid in full * * *."

We have no doubt that a sale and purchase of the cab and franchise at a cash price of $11,072 and a time price of $13,-249.28 were intended and agreed to by Rothman and Silver. This is emphasized by the provision in the chattel mortgage that "Mortgagor may make additional payments on account of the principal, without penalty." Silver thus could have bought the cab and franchise without paying more than the cash price of $11,072 had he desired or been able to do so. The time price was clearly and precisely calculable as being an additional $2,-177.28 (24% of $9,072). The bill of complaint reveals, at least by inference, that Silver gave Rothman checks dated a week apart for $54.08 each in the total amount of $11,249.28 which, with the $2,000 paid down, showed a total time price of $13,-249.28 as against the cash price of $11,072.

Judge Prendergast, in ruling on the demurrer, and Judge Harris, in following his ruling in granting the summary judgment, did not find that the transaction was a loan in the guise of a sale or an otherwise colorable effort to evade the usury laws; rather, Judge Prendergast found that a vendor cannot collect interest on a deferred purchase price in excess of that he could collect on a loan of the same amount. This is made evident by Judge Prendergast's opinion. He suggested that had any person other than Rothman been the purchase money mortgagee, undoubtedly there would have been a loan of money which, under Code (1957), Art. 49, § 3, would have limited

the lender to interest at 6% on declining balances. He then went on to reason:

> "There is no discernible, equitable reason why the vendor of goods should be permitted to charge more than the legal rate of interest on the purchase of the goods because of the extension of credit as long as a third party who would lend to the purchaser enough money to make the purchase is limited by the law. * * * On a cash sale * * * [a vendor] makes his normal profit on the sale of goods, which is his primary purpose for being in business. The lender of money for the payment of the purchase price makes his profit on the interest that is charged for the loan. To give a vendor the privilege of making not only both of these profits, but an additional bonus as well, appears unconscionable.
>
> "* * * It is time * * * to differentiate between that which is fact and that which is fiction. * * * The real substance of the transaction will determine its nature, and not the color or form it has assumed * * *."

The point of view Judge Prendergast espoused is that of some writers in legal periodicals and a small minority of courts.[1]

The courts in a great majority of jurisdictions (some forty-six states) long have held and still do hold that a bona fide sale of personalty at a deferred price greater than the cash price is not subject to the usury laws, even though the price on credit is arrived at by adding a per cent to the cash price in excess of the legal rate of interest or is stated as a rate of interest (which would be usurious if the transaction were a loan) on a note given for all or part of the purchase price. See 6A Corbin, *Con-*

---

1. See, for example, Bernstein, *Background of a Gray Area in Law: The Checkered Career of Usury,* 51 A. B. A. J. 846; Warren, *Regulation of Finance Charges in Retail Instalment Sales,* 68 Yale L. J. 839, 842-43; Comment, *Limiting Consumer Credit Charges by Reinterpretation of General Usury Laws and by Separate Regulation,* 55 Nw. L. Rev. 303; *cf.* Note, *Judicial and Legislative Treatment of "Usurious" Credit Sales,* 71 Harv. L. Rev. 1143, 1145-46; Daniel v. First National Bank of Birmingham, 227 F. 2d 353 (5th Cir.), *petition for rehearing denied, with opinion,* 228 F. 2d 803, 805-6.

*tracts* § 1500; Note, 71 Harv. L. Rev. 1143 (1958); Recent Decisions, 62 Mich. L. Rev. 1268; Warren, *Regulation of Finance Charges in Retail Instalment Sales,* 68 Yale L. J. 839; Comment, 55 Nw. L. Rev. 303; 55 Am. Jur. *Usury,* § 21. The reasons given are that a sale of property is not a loan or forbearance of money and the owner of property has a right to name the price at which he will sell and may offer his property at one price for cash or a much higher price on credit and the advanced price will not constitute usury, however great the difference, as long as it appears that the price charged is in fact fixed for the purchase of goods on credit with no design to evade the usury laws by making a loan or forbearance appear to be a sale when in fact it is not. The English courts soon took this view, *Beete v. Bidgood,* 7 B. & C. 453, 108 Eng. Rep. 792, as did the Supreme Court of the United States in *Hogg v. Ruffner,* 66 U. S. (1 Black) 115, 17 L. Ed. 38.

Maryland, both judicially and legislatively, has agreed that a bona fide sale of goods on credit at a price which is greater than the cash price by an amount in excess of the legal rate of interest on the cash price is not subject to the usury laws because it is not a loan of money but a sale. See *Falcone v. Palmer Ford,* 242 Md. 487, in which the matter and the authorities are reviewed in some detail and the holding is explicit (*Falcone* had not been decided when Judges Prendergast and Harris ruled in the present case); *Williams v. Reynolds,* 10 Md. 57; *Bailey v. Poe,* 142 Md. 57.

As *Falcone* pointed out, the Legislature of Maryland recognized and gave approval to the general rule when it passed the Retail Installment Sales Law, Code (1957) and Code (1965 Replacement Vol.), Art. 83, §§ 128 to 153 (which is not applicable here because the sales price was in excess of the $5,000 limit under the Sales Act). The Act permits finance charges and other charges far in excess of the rate of interest permitted on loans or for forbearances by § 3 of Art. 49 of the Code, provided full and detailed disclosure in written form, as specified, is made to the buyer. In 1963, after the transaction here in question, the legislature also approved the calculation of interest on loans in the manner the parties before us calculated it. By Ch. 871 of the Laws of that year, Code (1964 Replacement

Vol.), Art. 49, § 1A, the legislature provided that except in cases of loans on real estate secured by a mortgage or deed of trust "interest computed on the principal amount of a loan at a rate permitted by section 1 of this article [6%] may be charged or deducted in advance where the borrower is required to pay the indebtedness in equal or substantially equal monthly, or other periodic, installments. Interest permitted by this section shall not be deemed usurious under any other provision [2] of this Article."

The legislative recognition that transactions covered either by the Sales Act or § 1A are not to be regarded or treated as usurious nullifies Judge Prendergast's conclusion that a transaction such as that between Rothman and Silver is "unconscionable."

If it be assumed that there was not error in overruling Rothman's demurrer to Silver's bill because the four writings were not before the Court at the time that ruling was made, we think there was error in granting Silver a summary judgment. As we see it, the contract for the sale and purchase of the cab and its franchise between the parties was free of illegality and Rothman is entitled to collect from Silver the unpaid twenty-five payments of $54.08 each.

> *Decree reversed, with costs, and case remanded for further proceedings consistent with the views herein expressed.*

---

2. The word "provision" appears in the Act. The word "division" has been substituted in the Code.