<u>**UNPUBLISHED**</u>

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

**No. 06-1520**

---

FINAL ANALYSIS COMMUNICATION SERVICES,
INCORPORATED,

Plaintiff - Appellant,

versus

GENERAL DYNAMICS CORPORATION; GENERAL DYNAMICS
INFORMATION SERVICES, INCORPORATED,

Defendants - Appellees,

versus

MARCUS & BONSIB; BRUCE MARCUS; ORBCOMM, LLC;
MICHAEL H. AHAN,

Parties-in-interest.

----------------

ALVIN FREDERICK,

Movant.

---

**No. 06-1553**

---

FINAL ANALYSIS COMMUNICATION SERVICES,
INCORPORATED,

Plaintiff - Appellee,

versus

GENERAL DYNAMICS CORPORATION; GENERAL DYNAMICS
INFORMATION SERVICES, INCORPORATED,

                                        Defendants - Appellants,

          versus

MARCUS & BONSIB; BRUCE MARCUS; ORBCOMM, LLC;
MICHAEL H. AHAN,

                                        Parties-in-interest.
----------------

ALVIN FREDERICK,

                                        Movant.

_____

Appeals from the United States District Court for the District of
Maryland, at Greenbelt.   Peter J. Messitte, District Judge.
(8:03-cv-00307-PJM)

_____

Argued:  September 26, 2007          Decided:  November 1, 2007

_____

Before WILLIAMS, Chief Judge, SHEDD, Circuit Judge, and Joseph F.
ANDERSON, Jr., United States District Judge for the District of
South Carolina, sitting by designation.

_____

Affirmed in part; reversed in part by unpublished per curiam
opinion.

_____

**ARGUED:** James J. McGuire, Mark Arthur Berube, SHEPPARD, MULLIN,
RICHTER & HAMPTON, L.L.P., New York, New York, for Appellant/Cross-
Appellee.  Donald Beaton Verrilli, Jr., JENNER & BLOCK, L.L.P.,
Washington, D.C., for Appellees/Cross-Appellants. **ON BRIEF:** John
M. Quinn, ETHRIDGE, QUINN, MCAULIFFE, ROWAN & HARTINGER, Frederick,
Maryland; Elaine J. Goldenberg, Iris E. Bennett, Brian Hauck,
JENNER & BLOCK, L.L.P., Washington, D.C.; Linda L. Listrom, Michael
A. Doornweerd, Matthew J. Thomas, JENNER & BLOCK, L.L.P., Chicago,
Illinois, for Appellees/Cross-Appellants.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Final Analysis Communication Services, Inc. ("FACS"), a company established to own and operate satellite communication and data services, brought this action against General Dynamics Corporation and General Dynamics Information Services, Inc. (collectively "General Dynamics"), alleging breach of contract, fraud, and related causes of action. General Dynamics counterclaimed for breach of contract. The district court granted summary judgment in favor of General Dynamics on FACS' fraud and related claims, and the remaining claims proceeded to trial. A jury returned a mixed verdict, finding partially in favor of FACS and partially in favor of General Dynamics, and awarding damages to each party on the claims on which it prevailed. The district court then granted in part and denied in part General Dynamics' motion for judgment as a matter of law and denied FACS' motion for judgment as a matter of law in its entirety. Each party now appeals from the district court's post-trial rulings; additionally, FACS appeals from the grant of General Dynamics' motion for summary judgment. We affirm in part and reverse in part.


I

As noted, FACS was a company which planned to operate satellites that would provide data and communication services. From the time of its inception, FACS sought funding from four

3

sources. First, FACS planned to raise $40 million from general investors; second, FACS sought $50 million in equity from strategic partners; third, FACS intended to raise money in the high-yield bond market; and fourth, FACS planned to reinvest revenue from its operations in order to finance expansion.

Between December 1998 and June 2000, FACS and General Dynamics entered into several principal contracts providing for design, construction, and financing of FACS' systems. Of these, the Strategic Equity Partner Agreement ("SEPA") served as the overarching contract governing the relationship between the parties and detailing the financing and construction which General Dynamics would perform. The Command and Data Handling Subsystem Contract ("C&DH Contract") and the Overall System Engineering, Integration and Test and Ground Segment Prime Contract ("SEI/GS Contract") were construction contracts which specified the systems and products which General Dynamics would construct for FACS. The Stock Purchase Agreement ("SPA") was executed to carry out General Dynamics' financing obligations under the SEPA. Finally, the First Amendment to the SEPA ("First Amended SEPA") and the First Amendment to the SPA ("First Amended SPA") were signed to amend the original SEPA and SPA to provide for additional construction and financing obligations. The majority of these contracts were executed on General Dynamics' behalf by James Finley, General Dynamics Information Services' President.

In September 2000, General Dynamics suspended performance under all of its contracts with FACS, alleging that FACS had failed to pay prior amounts due General Dynamics under invoices issued for work performed under the construction contracts. General Dynamics also based its suspension of performance on the unavailability of planned financing for FACS, due to a severe downturn in the high-yield bond market. FACS, on the other hand, contends that General Dynamics breached its obligations under its contracts with FACS after discovering that Finley had entered into those contracts without authority and without the approval of his superiors. FACS also alleges that General Dynamics sought to escape its contractual obligations to FACS after realizing how open-ended those obligations were. Whatever the reason for General Dynamics' suspension of performance, it is undisputed that FACS collapsed after the suspension.

FACS filed this suit, seeking recovery for General Dynamics' breach of each of the contracts and for fraud and related torts. FACS also sought consequential damages for its collapse, which it alleges General Dynamics caused. General Dynamics counterclaimed for the unpaid invoice amounts and for an unpaid indemnity obligation allegedly owed it by FACS. For clarity, we discuss each of the causes of action separately.

We first turn to the claims on which the district court granted summary judgment. "We review the district court's order granting summary judgment de novo, viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Garofolo v. Donald B. Heslep Assocs., Inc., 405 F.3d 194, 198 (4th Cir. 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

In Counts III-V of its Complaint, FACS alleged that General Dynamics committed fraud and tortious interference by deciding to suspend work permanently on its contracts with FACS while falsely informing FACS that its suspension was merely temporary. Acting on this representation, FACS maintains that it passed up opportunities to work with other companies from September 2000 to April 2001. FACS contends that the district court erred in granting summary judgment in favor of General Dynamics on this claim.

Under Maryland law, "fraud and injury must be connected and must bear to each other the relation of cause and effect." Empire Realty Co., Inc. v. Fleisher, 305 A.2d 144, 148 (Md. 1973).[1] In other words, FACS must demonstrate that it "sustained damage by reason of the fraud, and that [its] injury was the natural and proximate consequence of [its] reliance on the fraudulent act." Id. at 147. We conclude that FACS failed to meet this standard. Specifically, FACS failed to adduce any evidence indicating that there were other business opportunities available to it which it declined based on General Dynamics' allegedly false representations. While FACS opined that Raytheon was interested in a strategic partnership, a Raytheon executive testified that Raytheon itself decided not to invest in FACS and that General Dynamics' actions had no bearing on its decision. Because FACS failed to offer evidence in support of this essential element of its fraud and tortious interference claims, the district court properly granted summary judgment in favor of General Dynamics.[2]

---

[1]Maryland law governs in this diversity action.

[2]FACS additionally claims that General Dynamics issued false invoices demanding payment of large sums and that these invoices helped force FACS' parent corporation into bankruptcy while warding off other potential strategic partners. However, the evidence overwhelmingly establishes that the invoices played no role in forcing FACS' parent into bankruptcy. Furthermore, FACS has presented no credible evidence of potential strategic partners who were deterred due to the invoices.

7

In Counts VI-VIII, FACS alleged that James Finley represented that he had authority to execute certain contracts with FACS and that it relied on his representations in signing the contracts. Because Finley actually lacked authority to bind General Dynamics to these contracts, FACS alleged that it had relied on Finley's misrepresentations to its detriment.

Once again, FACS' argument founders because it cannot show that it suffered any harm as a result of Finley's false representations. While General Dynamics notes that Finley lacked actual authority to enter into the cost incentives provisions of several of the contracts, it admits that Finley had apparent authority to execute the contracts. Therefore, General Dynamics was bound by the contracts pursuant to Finley's apparent authority to act as its agent. Because General Dynamics was bound by the contracts, FACS suffered no harm as a result of Finley's false representations. The district court properly granted General Dynamics' motion for summary judgment on these claims.[3]

III

We next turn to the crux of this litigation: FACS' claims that General Dynamics breached the SEPA, the C&DH Contract, the First Amended SEPA, the First Amended SPA, and the SEI/GS Contract. The

---

[3]We have examined the additional arguments which FACS makes, and we reject them.

8

jury found that General Dynamics had, indeed, breached the SEPA and the C&DH Contract but that these breaches were "excused by [FACS'] alleged nonperformance, or that the breach[es] [were] otherwise justified[.]" J.A. 1102.[4] Next, the jury found that General Dynamics committed an unjustified breach of the First Amended SEPA and First Amended SPA and awarded $21.87 million in compensatory damages for each breach and a total of $92.75 million in consequential damages. The district court upheld the verdict as to compensatory damages but reduced the amount of those damages to $19.87 million and struck one compensatory award as duplicative. The district court overturned the jury's verdict on consequential damages, striking that award in its entirety. Finally, the jury found General Dynamics liable for an unjustified breach of the SEI/GS Contract and awarded $23.28 million in compensatory damages. The district court subsequently granted General Dynamics' motion for judgment as a matter of law as to this claim. Both parties now appeal.

We review de novo the grant or denial of a motion for judgment as a matter of law. Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001). Judgment as a matter of law is proper when the court determines that there is no "legally sufficient evidentiary basis" for a reasonable jury to find for the non-moving party. Fed. R.

_____

[4]FACS does not contest the jury's findings with regard to the SEPA and C&DH Contract.

Civ. P. 50(a). When a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party. Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002).

## A.

We first address FACS' claims for breach of the First Amended SEPA and First Amended SPA. FACS contends that the district court erred by (1) overturning the jury's consequential damage award (2) requiring the jury to choose between consequential and reliance damages instead of giving FACS the option of electing a remedy after verdict.[5] General Dynamics cross-appeals, asserting that the district court should have granted its motion for judgment as a matter of law as to the First Amended SEPA and First Amended SPA claims in its entirety.

In support of its cross-appeal, General Dynamics argues that the First Amended SEPA and First Amended SPA are interdependent with the SEPA, the SPA, and, indeed, the construction contracts. Thus, according to General Dynamics, FACS' prior breach of its obligations under the SEPA and the C&DH Contract excused General

---

[5]FACS does not appeal from the reduction of its compensatory award to $19.87 million or from the striking of one award as duplicative.

10

Dynamics from performance of its obligations under the remaining contracts.

Under Maryland law, contracts are interdependent where they "clearly indicate[] that as between the immediate parties they were intended to constitute an entire and not a divisible undertaking [and where i]t was the evident purpose to make the two agreements interdependent[.]" Guar. Sec. Co. v. Equitable Trust Co., 110 A. 860, 861 (Md. 1920). Further, one contract may be incorporated into another by reference, making it "a part thereof, as if it were fully set forth therein." Goodwin & Boone v. Choice Hotels Int'l, Inc., 695 A.2d 168, 171 (Md. 1997). Of course, our examination of interdependency begins, as with any issue of contract interpretation, with the language of the contracts before us, and we must "giv[e] effect to all of their provisions, if it is possible to do so." Rothman v. Silver, 226 A.2d 308, 310 (Md. 1967). If our examination shows that the contracts are "susceptible of a clear, unambiguous, and definite understanding[,]" their construction is for us to determine as a matter of law. Id.

We begin with the SEPA, which is the overarching contract governing the parties' relationship. The SEPA refers extensively to both the C&DH Contract and the SPA, and the C&DH Contract is, in fact, attached to the SEPA as an exhibit. In addition, the SEPA states that it "shall remain in full force and effect until the

11

termination or expiration of the C&DH Contract." J.A. 1414. More importantly, the SEPA provides that "This Agreement, the C&DH Contract, the Stock Purchase Agreement, and the Non-Disclosure Agreement constitute the entire agreement between the Parties concerning the subject matter hereof[.]" J.A. 1419. Thus, the plain language of the SEPA indicates that it, the D&DH Contract, and the SPA must be considered interdependent.

It naturally follows that the First Amended SEPA and First Amended SPA must also be considered interdependent with the SEPA, the SPA, and the C&DH Contract. Although executed at a later time, these contracts simply amend the SEPA and the SPA, respectively. Moreover, they expressly refer to the SEPA and SPA, respectively, by stating that those original contracts remain in full force and effect. J.A. 1412, 1428. Accordingly, we conclude that these contracts are a part of the same interdependent transaction as the original contracts that they modify.

Having addressed interdependency, we turn to the question of breach. It is well established that a material breach by one party to a contract excuses the other party from performance. Rogers Refrigeration Co., Inc. v. Pulliam's Garage, Inc., 505 A.2d 878, 883 (Md. App. 1986); Fromm Sales Co., Inc. v. Troy Sunshade Co., 159 A.2d 860, 863 (Md. 1960). Here, the jury found that General Dynamics' non-performance under the SEPA and the C&DH Contract was excused, a finding premised on FACS' prior material breach of those

12

contracts.[6]  However, because the First Amended SEPA and the First Amended SPA are interdependent with the SEPA and the C&DH Contract, FACS' prior breach also excused General Dynamics from performance under each of these contracts.  With General Dynamics' obligations under the First Amended SEPA and First Amended SPA excused, the jury's finding of an unjustified breach of these contracts, and its damage awards therefor, cannot stand.  The district court should have granted General Dynamics' motion for judgment as a matter of law on this basis.

Because we conclude that General Dynamics cannot be liable for breach of the First Amended SEPA and First Amended SPA, we necessarily conclude that FACS cannot prevail on its claim that the district court erred in striking the jury's consequential damage award.  We likewise need not consider whether the district court erred in forcing the jury to choose between consequential and reliance damages.

## B.

FACS next appeals from the district court's entry of judgment as a matter of law on its claim for breach of the SEI/GS Contract,

---

[6]This premise is reenforced by the jury's express finding that FACS materially breached the SEPA and C&DH Contract as expressed in its verdict in favor of General Dynamics on its counterclaim.  See infra.  On that claim, General Dynamics alleged, and the jury found, that FACS committed a breach by failing to pay invoices issued under the C&DH Contract.  A failure to make payments due under a contract "indisputably constitutes a material breach[.]"  Fromm Sales, 159 A.2d at 863.

13

for which the jury awarded FACS $23.28 million in compensatory damages. At trial, FACS contended that General Dynamics breached both the Correction of Deficiencies and the Launch Delay provisions of the contract. In overturning the jury's verdict, the district court found that these provisions "are simply inapplicable to this case [because] . . . there simply was no fact pattern that fit either the correction of deficiencies claim or the launch delay." J.A. 1116. Further, the court noted that "the plain language [of the provisions] refers to scenarios that simply did not apply here." Id. The district court based these findings on the fact that construction under the contract never progressed to the point where the two provisions could have been triggered.

We have reviewed the record of the evidence presented at trial, and we agree with the district court's stated analysis. Accordingly, we affirm the grant of General Dynamics' motion for judgment as a matter of law on FACS' claim for breach of the SEI/GS Contract.

IV

Finally, we consider FACS' appeal from the jury's verdict on General Dynamics' counterclaims.

On the first counterclaim, the jury awarded General Dynamics $3 million for FACS' nonpayment of an invoice issued under the C&DH Contract. This invoice was payable on January 9, 2000. Evidence presented at trial indicated that, around January 9, FACS informed

14

General Dynamics that it lacked money to pay the invoice but that it would be able to do so after the high-yield bond offering occurred in August or September of 2000. FACS now contends that this meant that the payment of the invoice was contingent on the bond offering occurring. We find FACS' argument unpersuasive.

The evidence at trial established that the sole reason General Dynamics delayed FACS' payment of the $3 million owed it was FACS' inability to pay. Maryland law provides that:

> [W]hen a promise is such as to constitute absolute liability, and the parties agree that the debt shall be paid upon the happening of a future event chosen merely as a convenient time for payment, and the event does not happen as contemplated, the law implies a promise to pay within a reasonable time.

Ewell v. Landing, 85 A.2d 475, 477 (Md. 1952). Thus, as the district court noted, the jury certainly could have found "not that the high-yield bond offering was a contingency, but [that] it was merely the time when the money was due and payable, that it was an accommodation to the plaintiff[.]" J.A. 1124-25. We agree, and we affirm the denial of FACS' motion for judgment as a matter of law on this claim.

General Dynamics' second counterclaim arises from a subcontract it entered into with Raytheon. In a contract executed in March, 2000, General Dynamics subcontracted with Raytheon to build ground stations for the satellites it was constructing for FACS. In this contract, Raytheon agreed to invest $5 million in FACS and an additional $10 million after the high-yield bond

15

offering. General Dynamics guaranteed Raytheon's $5 million investment and, in an Agreement & Waiver ("A&W"), FACS agreed to indemnify General Dynamics if Raytheon invoked the $5 million guarantee.

After the bond offering failed, Raytheon insisted that General Dynamics pay it $5 million to satisfy its guarantee, and General Dynamics complied. General Dynamics, in turn, required FACS to honor its obligation under the A&W, but FACS never did. The jury found FACS liable for breach of the A&W and awarded General Dynamics $5 million.

FACS maintains that its obligation to pay General Dynamics was excused because of General Dynamics' earlier breach of the Amended SEPA and SEI/GS contract. However, as we have noted, any breach by General Dynamics of these contracts is excused due to FACS' prior breach. Further, the A&W is not, as a matter of law, interdependent with the Amended SEPA and SEI/GS contracts. Rather, it was executed as a separate transaction when Raytheon was subcontracted by General Dynamics. Therefore, the district court correctly upheld the jury's verdict of $5 million.

V

Based on the foregoing, we reverse the district court's partial denial of General Dynamics' motion for judgment as a matter of law on FACS' claims for breach of the First Amended SEPA and

16

First Amended SPA but affirm the judgments entered below in all other respects.

AFFIRMED IN PART;<br>REVERSED IN PART

17